**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
_____

| | |
|---|---|
| THOMAS HEYER )<br>and ROBERT BOYD, )<br>               Plaintiffs, )<br> )<br>      v. )<br> )<br>ERIC H. HOLDER, JR., in his official capacity )<br>as Attorney General of the United States; )<br> )<br>UNITED STATES BUREAU OF PRISONS, )<br> )<br>CHARLES E. SAMUELS, JR., in his official )<br>capacity as Acting Director of the United States )<br>Bureau of Prisons; )<br> )<br>IKE EICHENLAUB,  in his official )<br>capacity as Regional Director of the )<br>United States Bureau of Prisons )<br>Mid-Atlantic Region; )<br> )<br>and )<br> )<br>SARA M. REVELL, Warden, FCC Butner, and )<br>TRACY W. JOHNS, Warden, FCI Butner )<br>Medium, )<br> )<br>            Defendants. )<br> )<br> )<br>_____) | Case No. 5:11-ct-03118-D<br><br>**VERIFIED FIRST AMENDED**<br>**COMPLAINT** |

      Plaintiffs Thomas Heyer ("Mr. Heyer") and Robert Boyd ("Mr. Boyd") (collectively

"Plaintiffs"), by their undersigned counsel, file this First Amended Complaint against defendants

Eric H. Holder, Jr.; the United States Bureau of Prisons ("BOP"); Charles E. Samuels, Jr.; Ike

Eichenlaub; Sara M. Revell; and Tracy W. Johns (collectively "Defendants"), alleging as

follows:

## NATURE OF THE ACTION

1.      This lawsuit arises from Defendants' violation of federal law and the United States Constitution by refusing to provide Thomas Heyer and Robert Boyd – two deaf men detained at the BOP's Federal Correctional Institution ("FCI") in Butner, North Carolina – effective communication in the form of qualified American Sign Language ("ASL") interpreters and other auxiliary aids necessary to accommodate their disability. Defendants' illegal and discriminatory conduct has deprived – and continues to deprive – Mr. Heyer and Mr. Boyd of the ability to, *inter alia*, receive adequate and informed medical treatment, participate in institution disciplinary proceedings, effectively take part in any rehabilitative, educational, or religious programs, or communicate with those within and outside the institution.

2.      Messrs. Boyd and Heyer are not prisoners. Following a recent hearing, Mr. Boyd has been civilly committed to the custody of the Attorney General under 18 U.S.C. § 4248 and is being detained at FCI Butner. Under this statutory scheme, Mr. Boyd's continued detention is directly dependent upon ongoing mental health examinations and treatments designed to assess whether he is fit to return to society. Defendants have failed to provide *any* qualified interpreters or other auxiliary aids, even for these examinations and treatments, thereby denying Mr. Boyd a fair opportunity to fully participate in these rehabilitation programs, demonstrate any rehabilitation, and eventually obtain his release to freedom. Thus, Defendants' actions permit them to detain Mr. Boyd *indefinitely*, not because Mr. Boyd would remain a danger to society but because, without effective communication, he would be unable to benefit from any treatment or demonstrate any rehabilitation to Defendants.

3.      Mr. Heyer also has been detained under 18 U.S.C. § 4248 but awaits his civil commitment hearing, currently scheduled to take place on May 7, 2012. If Mr. Heyer is ordered

committed, he will have the same pressing need for qualified interpreters and other auxiliary aids to enable him to fully participate in these rehabilitation programs, demonstrate his rehabilitation, and obtain his release to freedom.

4.    Accordingly, Mr. Heyer and Mr. Boyd seek from the Court the accommodations to which they are legally entitled and which Defendants have failed to provide.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

6.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(e) because Plaintiffs and some or all of the Defendants reside in this district, and a substantial part of the events and omissions giving rise to Mr. Heyer and Mr. Boyd's claims occurred in this district.

## THE PARTIES

A.    **Plaintiffs**

1.    **Thomas Heyer**

7.    Thomas Heyer has been deaf since birth.

8.    Mr. Heyer's native language is American Sign Language ("ASL"), a complex language that employs signs made with the hands, facial expressions and body language.  ASL is a language distinct and different from English—it is not simply English in hand signals.  ASL has its own vocabulary and its own rules for grammar and syntax.  Mr. Heyer requires a qualified ASL interpreter to communicate effectively with persons who do not know and use ASL.

9.    Mr. Heyer's ability to read lips is limited.  In general, lip reading is a very difficult and unreliable form of communication.  It is extremely difficult to lip-read English because only a small fraction of the sounds used in speaking are clearly visible on the mouth and many sounds

appear identical on the lips. In addition to the difficulties in lip-reading, the ability to accurately lip-read is greatly affected by the speaker's accent, facial bone structure, facial musculature, facial hair, lighting, distance from the lip reader, and other external factors.

10.     In addition, reading and writing cannot be relied upon to provide effective communication with Mr. Heyer. Mr. Heyer did not complete high school and has an eighth grade education. As with most persons who become deaf before acquiring language, ASL is Mr. Heyer's native language, and English is a second language for him. Therefore, Mr. Heyer's English reading and writing skills are much lower than average, and his ability to communicate by reading and writing is profoundly compromised.

### 2.     Robert Boyd

11.     Robert Boyd, a Marine Corps veteran, has been profoundly deaf since 1975, when he lost his hearing as a result of his military service. Mr. Boyd is unable to understand speech, even with the use of hearing aids. Mr. Boyd uses hearing aids to help him hear the direction from which a sound is coming. However, the hearing aids do not work properly unless Mr. Boyd receives new hearing aid batteries when the old batteries weaken or die.

12.     Mr. Boyd communicates by using ASL and requires a qualified ASL interpreter to communicate effectively with persons who do not know and use ASL.

13.     Mr. Boyd's ability to read lips is limited. And, for the reasons discussed above, lip reading is a difficult and unreliable form of communication.

14.     For these reasons and others, Mr. Boyd does not effectively understand spoken English. Instead, Mr. Boyd requires a qualified ASL interpreter to communicate effectively with persons who do not know and use ASL.

15.     Despite Mr. Boyd's profound deafness, a member of Defendants' staff – Mr.

Taylor, who is Mr. Boyd's unit counselor – has repeatedly told Mr. Boyd that he does not believe Mr. Boyd is deaf and has refused him effective communication in the form of a qualified ASL interpreter and other auxiliary aids on this ground.

**B.      Defendants**

16.     Eric H. Holder, Jr. ("Attorney General Holder") is the Attorney General of the United States.  Pursuant to 18 U.S.C. § 4248, persons who are declared "sexually dangerous" are committed the custody of Attorney General Holder.  He is sued in his official capacity.

17.     The BOP is the federal executive agency that, under the direction of the Attorney General, is in charge of the management and regulation of all federal penal and correctional institutions.  18 U.S.C. § 303(a)(1).  The BOP is headquartered in Washington, D.C.  FCI Butner, where Plaintiffs are detained, is a correctional complex controlled and operated by the BOP.

18.     Charles E. Samuels, Jr. ("Director Samuels") is the Director of the BOP, having been appointed on December 21, 2011.  Director Samuels is responsible for the oversight and management of the BOP's 115 institutions and for the safety and security of the more than 200,000 inmates and detainees under the agency's jurisdiction, including the BOP's policies and practices regarding the treatment of and services provided to disabled inmates and detainees. Acting Director Kane is aware of the BOP's and FCI Butner's policies and practices regarding disabled individuals and, more specifically, Defendants' failure to provide Plaintiffs with effective communication in the form of qualified interpreters and other auxiliary aids.  He is sued in his official capacity.

19.     Ike Eichenlaub ("Regional Director Eichenlaub") is the Regional Director of the BOP's Mid-Atlantic Region. He is responsible for the development, approval, implementation, monitoring and evaluation of policies, operations and programs for the federal institutions and

correctional complexes in the Mid-Atlantic Region, including FCI Butner. He is aware of the BOP's and FCI Butner's policies and practices regarding disabled individuals and, more specifically, Defendants' failure to provide Plaintiffs with effective communication in the form of qualified interpreters and other auxiliary aids. He is sued in his official capacity.

20.     Sara M. Revell ("Warden Revell") and is the warden of Federal Correctional Complex ("FCC") Butner. Tracy W. Johns ("Warden Johns") is the warden of FCI Butner. Warden Revell and Warden Johns are responsible for the day-to-day operations of the Butner. They are aware of the BOP's and FCI Butner's policies and practices regarding disabled individuals and, more specifically, Defendants' failure to provide Plaintiffs with effective communication in the form of qualified interpreters and other auxiliary aids in FCI Butner's programs and services. They are sued in their official capacity.

21.     At all times relevant to this action, Acting Director Kane, Regional Director Eichenlaub, Warden Revell, and Warden Johns, were acting pursuant to their authority as an official, agent, or employee of the United States.

## STATEMENT OF FACTS

### A.     Plaintiffs' Civil Detention

22.     Although they are being held in FCI Butner, Plaintiffs are not prisoners. Mr. Heyer and Mr. Boyd both have been previously convicted of federal crimes, but they have served their complete sentences. They are detained under the Adam Walsh Child Protection and Safety Act of 2006 (the "Act"), which permits the Director of the BOP or the Attorney General to certify that an individual in the BOP's custody is "sexually dangerous." *See* 18 U.S.C. § 4248. Following such certification, the release of the individual is stayed pending a mandatory hearing to determine whether the person is sexually dangerous. *Id.*

23.     In 2008, the BOP certified Mr. Heyer and Mr. Boyd as "sexually dangerous" persons under 18 U.S.C. § 4248, and were detained at FCI Butner.

24.     Mr. Heyer's civil commitment hearing is currently scheduled to occur on May 7, 2012.

25.     On January 26 and 27, 2012, the Court held a hearing pursuant to 18 U.S.C. § 4248 to determine whether Mr. Boyd was a sexually dangerous person. Mr. Boyd was provided with a qualified interpreter for the entirety of the hearing. At the conclusion of the hearing, the Court determined Mr. Boyd to be sexually dangerous and ordered him committed to the custody and care of the Attorney General.

26.     Under the Act, the Attorney General is required to "place [Mr. Boyd] for treatment in a suitable facility," 18 U.S.C. § 4248(d), and "shall, before placing [Mr. Boyd] in a facility pursuant to the provisions of section . . . 4248, consider the suitability of the facility's rehabilitation programs in meeting the needs of [Mr. Boyd]." *Id.* § 4247(i)(C).

27.     A suitable facility is, at a minimum, a facility with adequate resources to provide care and treatment for Mr. Boyd, given the nature of Mr. Boyd's characteristics.

28.     Subsequent to the Court's commitment order, the Attorney General has continued to detain Mr. Boyd at FCI Butner.

29.     Under the Act, the director of FCI Butner is required to "prepare annual reports concerning the mental condition of [Mr. Boyd] and containing recommendations concerning the need for [Mr. Boyd's] continued commitment. The reports shall be submitted to the court that ordered [Mr. Boyd's] commitment to the facility . . . ." *Id.* § 4247(e). The director of FCC Butner also is required "notify [Mr. Boyd] of any available rehabilitation programs." *Id.* § 4247(e)(2).

30.     Mr. Boyd is eligible to be released from the Attorney General's custody when the director of FCI Butner determines that his "condition is such that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment." *Id.* § 4248(e).

31.     Under BOP regulations, when making a determination of dangerousness, BOP mental health professionals may consider, among other things, evidence "[e]stablished through interviewing and testing of [Mr. Boyd's] denial or inability to appreciate the wrongfulness, harmfulness, or likely consequences of engaging" in such misconduct; "[s]tatement(s) of intent to re-offend," "[a]dmission of inability to control behavior," and the "successful completion of, or failure to successfully complete, a sex offender treatment program." 28 C.F.R. § 549.95(b), (c), (d), (e).

32.     These mental health and rehabilitation assessments and treatments, which are used to determine the necessity and duration of Mr. Boyd's civil commitment, depend upon effective and ongoing communication with prison medical, psychiatric, and psychological staff. Defendants have denied such communication to Mr. Boyd.

33.     Since his civil commitment hearing, Mr. Boyd has begun participating in Defendants' treatment and rehabilitation program for persons committed under § 4248. This program entails at least fifteen hours per week of treatment sessions with Defendants' and their staff. The purpose of these sessions is to rehabilitate Mr. Boyd and also to determine the degree of Mr. Boyd's rehabilitation. Mr. Boyd has repeatedly requested that qualified interpreters be present for these treatment sessions. Defendants have failed to provide such interpreters. Accordingly, Mr. Boyd does not understand what has been and what is being communicated to

him during these treatment sessions. During these sessions, Mr. Boyd is also frequently given writing assignments, but cannot be certain he understands the verbal directions.

34. Additionally, Defendants are unable to apply certain medical and psychological tests to Mr. Boyd, even though those tests are applied to other persons committed under § 4248, because those tests require the patient to listen to audio recordings through headphones.

35. Though Mr. Heyer has not yet had a civil commitment hearing, Defendants have provided no indication that, if he were ordered committed following his hearing on May 7, 2012, Defendants would provide him with qualified interpreters or any other auxiliary aids in connection with Defendants' treatment and rehabilitation program under § 4248.

**B.      Medical Treatment and Rehabilitation**

36. Prior to their civil commitment hearings, Mr. Heyer and Boyd were encouraged to attend Multidisciplinary Treatment Team ("MTT") meetings to discuss available programs and rehabilitation progress. Defendants have failed to provide Mr. Heyer or Mr. Boyd with a qualified interpreter during these meetings. For example, at a September 21, 2010, meeting with his MTT, Mr. Heyer left the meeting, at which no interpreter was provided, because he could not effectively participate. However, Butner staff have communicated to other detainees that Mr. Heyer's non-attendance may be held against him at subsequent proceedings. Mr. Boyd also believes that there will be mandatory team meetings in his § 4248 treatment program that he will be required to attend and where a qualified interpreter will be necessary in order to ensure his effective participation.

37. Mr. Boyd receives frequent medical treatment at FCI Butner for certain dermatological conditions, and Defendants have not provided a qualified ASL interpreter to accompany him during these medical appointments. Forced to rely on lip-reading, Mr. Boyd's

medical appointments are further hindered due to his inability to engage in even limited communication with non-native English-speaking doctors, whose accents compound the inherent difficulties of lip-reading.

38.    On or about December 7, 2011, Mr. Boyd discovered that he was suffering from Bell's Palsy, which causes nerve damage and paralysis in the face.  Before he was diagnosed with this condition, the BOP medical staff examined Mr. Boyd to determine if he had suffered a stroke.  In each of his appointments, Defendants failed to provide Mr. Boyd a qualified interpreter.

39.    Mr. Heyer also receives medical treatment at FCI Butner for his high blood pressure and high cholesterol, and Defendants have not provided a qualified ASL interpreter to accompany him during these medical appointments.  In addition, because he is not provided an interpreter at these appointments, Mr. Heyer does not know when and how often he must refill his prescription medications.  For example, during a medical appointment on February 8, 2011, the doctor reprimanded Mr. Heyer for failing to get refills for his blood pressure medication, but Mr. Heyer did not understand the doctor's previous instructions for taking the medications because he was not provided with an interpreter at that prior visit.  Mr. Heyer therefore went without critical medications due to the failure of Defendants to provide him with a qualified ASL interpreter at his medical appointments.  In addition, doctors at Butner have altered Mr. Heyer's medication dosages on occasion, without the benefit of actually communicating with their patient.

40.    On or about the evening of November 28, 2011, Mr. Heyer suffered from a seizure in his cell.  Mr. Heyer's roommate alerted the officer on duty, who took no action beyond telling Mr. Heyer and his roommate that Mr. Heyer "looked fine" to him.  As a result of the

seizure, Mr. Heyer's tongue was bitten and swollen. When Defendants eventually permitted Mr. Heyer to see a doctor on January 10, 2012—more than one month after his seizure—Defendants failed to provide Mr. Heyer with a qualified interpreter.

41.     On or about January 12, 2012 Mr. Heyer suffered a second seizure. Mr. Heyer requested a qualified interpreter accompany him to a doctor's appointment. Again, Defendants refused to provide one.

42.     On or about the week of January 23, 2012, Mr. Heyer had two doctor's appointments in which he requested a qualified interpreter. On both occasions, Defendants refused to provide one. Mr. Heyer did not understand the doctors' statements or instructions during these appointments.

43.     In connection with his treatment for seizures, Defendants performed a CT scan on Mr. Heyer, but provided him no qualified interpreter while conducting the scan. Additionally, Defendants have never informed Mr. Heyer of the results of the CT scan.

44.     On or around March 5, 2012, Defendants provided Mr. Heyer prescription medication for his seizures, but failed to provide Mr. Heyer with a qualified interpreter to explain how to use the medication. Accordingly, Mr. Heyer is uncertain if he is taking the medication properly.

45.     To date, as a result of Defendants' failure to provide Mr. Heyer with a qualified interpreter, Mr. Heyer does not know why he has suffered from seizures or whether they will continue.

46.     Under the foregoing circumstances, neither Mr. Heyer nor Mr. Boyd are able to understand their medical treatment or provide informed consent to medical treatments and procedures.

47.     Mr. Heyer and Mr. Boyd also receive dental treatment at FCI Butner, but they are not provided with a qualified ASL interpreter to accompany them during these dental appointments.  For example, Mr. Boyd last visited the dentist the week of February 7, 2011, to address a tooth infection and extraction.  He was not provided with an interpreter at this visit, and no one accompanied him to the appointment.  Similarly, Mr. Heyer recently went to the dentist for treatment for a broken tooth, but was provided no interpreter and did not understand anything the dentist was saying to him.  In addition to the normal difficulties surrounding lip-reading, Mr. Heyer and Mr. Boyd were both completely unable to read the dentist's lips due to the strong examination light and the fact that the dentist wore a mask.  Again, neither Mr. Heyer nor Mr. Boyd could effectively understand their dental treatment or consent to dental procedures under these circumstances.

48.     Additionally, Mr. Boyd has requested a qualified ASL interpreter to accompany him during his ophthalmology appointments, and Defendants have refused to provide one.

**2.      Disciplinary Proceedings**

49.     Plaintiffs were not provided an interpreter for the registration and orientation programs upon their arrival in FCI Butner, nor are they provided an interpreter for periodic "Town Hall Meetings," which cover rules and other matters.  As a result, Plaintiffs have had and continue to have difficulty understanding the rules and regulations of FCI Butner.

50.     As a result of this lack of knowledge about the facility rules and regulations, Mr. Heyer and Mr. Boyd have been subject to disciplinary proceedings and called before the Unit Disciplinary Committee ("UDC") on several separate occasions for alleged violations of the facility's rules and regulations.  However, despite specific requests from both Mr. Heyer and Mr. Boyd, neither have been provided with a qualified ASL interpreter at these proceedings.  The

proceedings are before the unit counselor, Mr. Taylor, and the case manager, Ms. Weaver. Mr. Taylor has even informed Mr. Boyd on several occasions that he does not believe Mr. Boyd is deaf.

51.     As a result of these disciplinary proceedings, certain of Plaintiffs' privileges, including telephone and commissary privileges, have been taken away for periods of time ranging from two to six months.

### 3.     Communication With Those Outside FCI Butner

52.     Plaintiffs would like to communicate with people outside of FCI Butner, such as their attorneys, family, and friends, but their access to appropriate telecommunications devices is repeatedly restricted or denied.

53.     Plaintiffs cannot use a telephone in the same way as a hearing person. Instead, they require a TTY, a videophone, or a CapTel phone.

    a.     A TDD or TTY (hereinafter "TTY") allows people to send written messages back and forth to each other by telephone. When both users have TTYs, they can communicate directly over telephone lines. When one person does not have a TTY, a Telecommunications Relay Service ("TRS") operator reads aloud the written messages from the TTY user and transcribes the non-TTY user's verbal response. TRS services are toll free. Though a TTY is a helpful communication tool, it ultimately relies on the user's ability to communicate in written English and, in all events, is a much more time-intensive communication tool than the telephone. The TTY is 60-year-old technology, and has been for the most part supplanted by the videophone. Most deaf individuals no longer have TTYs, and communicate on telephone solely by videophone.

    b.     A videophone is a telephone with a camera and screen for visual, realtime communication. Thus, a videophone is a far more effective auxiliary aid for deaf individuals like Plaintiffs who use ASL as a primary means of communication, both because it depends upon ASL skills instead of written skills for communication, and because without a videophone there is no way to contact most deaf individuals outside the institution who no longer own TTYs. Like the TRS system, there is now a Video Relay Service ("VRS"), so that communication can be accomplished by videophone between an ASL user and a hearing, non-ASL user through a relay operator who is a qualified ASL interpreter. However,

under the current system one cannot place a call from a TTY to a videophone through any relay service.

c.     A CapTel phone is an inexpensive device that allows the user to call another party and speak verbally, while the answering party responses are transcribed and displayed through a captioning service. The CapTel thus permits deaf individuals like Mr. Boyd to use their voice to send messages, while using their eyes to read the written English responses.

54.     The Maryland Unit has only one TTY device, and does not have any videophones or CapTel phones. The single TTY device is located in the office of the unit counselor, Mr. Taylor, and therefore can be accessed only by asking Mr. Taylor or the case manger, Ms. Weaver, to unlock the office. Then, either Mr. Taylor or Ms. Weaver must dial the number of the person to whom Plaintiffs wish to communicate. If Mr. Taylor or Ms. Weaver have left the office or are otherwise unavailable, Plaintiffs have no way of accessing the TTY device.

55.     Moreover, Plaintiffs are not permitted to make direct TTY to TTY calls on the Maryland Unit TTY. All TTY calls must be made to a Telecommunications Relay System, which is designed to relay TTY calls to hearing persons. Therefore Plaintiffs are completely unable to place calls to other deaf persons outside the institution, even if these persons still had TTYs.

56.     Plaintiffs' access to the lone TTY device in the Maryland Unit is regularly restricted or denied, and their access to the TTY device does not provide them an equal opportunity to access telephones as is provided to other detainees. Other detainees are permitted up to 300 minutes of phone time per month, while Mr. Heyer and Mr. Boyd are given access to the TTY phone for significantly shorter periods of time. While other detainees are permitted to use the telephone for calls from 6:00 a.m. until 11:30 p.m., seven days a week, Plaintiffs are restricted to using the TTY device on weekdays from 7:30 a.m. until 3:30 p.m. Finally, while

other detainees need not ask permission to use the phone and can use the phone several times a day, Plaintiffs must continuously ask Mr. Taylor or Ms. Weaver to unlock the office in order to use the TTY, and those individuals consistently deny them access altogether without justification. Furthermore, if the counselors are away for training or on vacation, Plaintiffs are unable to access the TTY at all.

57.     Mr. Heyer is especially restricted in his ability to communicate with friends and family outside the institution. Writing letters is not an effective means of communication for him, and TTY communication poses similar problems for him, due to his lack of English language competency.

58.     In addition, Mr. Heyer has deaf friends whom he is unable to telephone due to the fact that they do not own TTYs, and instead use videophones. Because Mr. Heyer does not have access to a videophone, he is unable to stay in communication with his deaf friends outside the institution and the deaf community in general.

59.     Regular access to a videophone with relay technology, and a CapTel for Mr. Boyd, would allow Plaintiffs to remain in contact with their family, friends, and attorneys outside of FCI Butner.

**4.     Other Necessary Accommodations Denied**

60.     The facilities at FCI Butner, including Plaintiffs' rooms, lack visual alarms, vibrating pagers, vibrating watches, vibrating bed devices, or message boards that would alert Plaintiffs to an emergency, such as a fire or lockdown.

61.     Plaintiffs are not alerted to announcements made over the public address speaker system, such as meal announcements, count calls, or meetings. A vibrating pager and message board where announcements are posted would allow them to receive these messages.

62.     Additionally, vibrating watches and vibrating bed devices would provide non-aural alarm notifications and permit Plaintiffs to timely attend scheduled activities at FCI Butner. Defendants have failed to provide these devices.

63.     Mr. Boyd's hearing aid batteries, though used properly, often significantly weaken and become unusable after a period of days or even hours. Despite Mr. Boyd's requests, Defendants have not provided well-operating hearing aid batteries to him on an as-needed basis. Mr. Boyd is often provided with old and corroded hearing aid batteries that only last a few minutes. As a result, Mr. Boyd's hearing aids are often useless for long periods of time or have been damaged because of the corrosive batteries provided.

64.     Plaintiffs would like to attend religious services offered at FCI Butner. Mr. Boyd consistently attended religious services at prior corrections institutions where a volunteer interpreter was consistently provided. However, no interpreter is provided for the services at FCI Butner, making it impossible for Plaintiffs to effectively participate in those services.

65.     Mr. Heyer attends a GED preparation course offered at FCI Butner, but because of Defendants' failure to provide him with an interpreter at the class, his participation is limited because he cannot ask the course assistant any questions and cannot hear when the time limits for sample examinations are finished.

66.     Plaintiffs are unable to access goods sold in the commissary because they are handed through a mirrored window, and they cannot interact with the person behind the mirrored window in any fashion.

67.     In the area of FCI Butner that houses persons committed pursuant to § 4248, where Mr. Boyd is housed, there is no consistent access to a closed-captioned television. Without closed captions, Mr. Boyd cannot understand television programming.

68.     Mr. Boyd has requested and Defendants have failed to provide a device called an Icom, which is made to work in conjunction with his hearing aids.  The Icom sends a signal from a television unit or any other audio device directly into Mr. Boyd's hearing aids.  An Icom device would permit Mr. Boyd to better hear sounds from the television units or other audio devices inside the facilities at FCI Butner.  The Icom device, combined with closed captioning on the television units, would permit Mr. Boyd to better understand television programming and other audio recordings.

**5.     Administrative Grievance Procedures**

69.     On at least two occasions, Defendants told Mr. Boyd that BOP's administrative remedies apply only to prisoners and do not apply to civil detainees.  Defendants informed Mr. Boyd that, if he filed an administrative grievance, it would likely be discarded and not responded to.

70.     Nevertheless, Mr. Boyd attempted to use the administrative process on at least one occasion to assert his right to a qualified ASL interpreter, to no avail.  On or about September 7, 2010, Mr. Boyd filed a Request for Administrative Remedy (the "Request") in which he asserted, *inter alia*, that he was not provided a qualified ASL interpreter during an disciplinary proceeding.

71.     Defendant Warden Johns denied Mr. Boyd's Request on September 14, 2010.

72.     On or about November 1, 2010, Mr. Boyd appealed Warden Johns' denial to the BOP Regional Office.  On March 31, 2011, the BOP Regional Director—Defendant Ike Eichenlaub—denied Mr. Boyd's appeal.  Defendant Eichenlaub's only written response to the issue of Mr. Boyd's deafness and Defendants' failure to provide a qualified ASL interpreter was: "According to the record and UDC Chairman when contacted, there were no communication concerns or issues identified during the discipline process, and we find no reason to elaborate

further."

**6.      Inmate Companion Person**

73.      Another detainee—Mr. Andrew Sheradin—has occasionally been assigned by Defendants to attempt to assist Mr. Heyer communicate with others in FCI Butner.

74.      Defendants have paid Mr. Sheradin to serve as an Inmate Companion Person to Mr. Heyer.

75.      Mr. Sheradin, however, is not a qualified, certified, or licensed ASL interpreter. Mr. Sheradin's sign language skills are extremely rudimentary and wholly deficient to provide Mr. Heyer or Mr. Boyd with an effective means of communication.

76.      Mr. Sheradin has no formal education or training in sign language.  In fact, the only sign language skills Mr. Sheradin possesses were learned from the time he spent with Plaintiffs at FCI Butner.

77.      Though Mr. Sheradin was at one point Mr. Heyer's roommate, Mr. Sheradin has since been moved to another area in the unit.  Accordingly, Mr. Sheradin interacts with Mr. Heyer on a less regular basis.

78.      Mr. Heyer and Mr. Boyd object to disclosure of their private medical information to Mr. Sheradin, a fellow detainee, who is under no obligation to keep confidential any information communicated during Plaintiffs' medical appointments.

**CLAIMS FOR RELIEF**

**COUNT I: DISCRIMINATION ON THE BASIS OF A DISABILITY
IN VIOLATION OF THE REHABILITATION ACT AGAINST ALL
DEFENDANTS (29 U.S.C. §§ 794 ET SEQ. AND 5 U.S.C. § 703)**

79.      Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

80.     The Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (hereinafter

"Rehabilitation Act"), provides that "[n]o otherwise qualified individual with a disability in the

United States, as defined in section 705(20) of this title, shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance or under any

program or activity conducted by any Executive agency or by the United States Postal Service."

81.     Plaintiffs are deaf and, as such, are qualified individuals with a disability within

the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

82.     Plaintiffs are otherwise qualified to receive informed medical treatments offered

to other inmates and detainees at FCI Butner, and eligible to participate in commensurate

educational, religious, rehabilitation, vocational, and all other programs provided to others at that

facility.

83.     The BOP is an executive agency within the meaning of 29 U.S.C. § 794(a).

84.     The operations of the BOP, including the departments, agencies, programs and

instrumentalities at FCI Butner such as Health Services, Psychology Services, Sex Offender

Management and Treatment, Drug Abuse Treatment, the Education Department and its

associated programs, Vocational and Occupational Training programs, Inmate Skills

Development Initiative, and work programs such as Federal Prison Industries, are "program[s] or

activit[ies] conducted by an Executive Agency" within the meaning of 29 U.S.C.

§§ 794(b)(1)(A)-(B) and/or (b)(2)(B).

85.     At all times relevant to this action, the Rehabilitation Act was in full force and

effect in the United States, and Plaintiffs had and have a right not to be subjected to

discrimination on the basis of their disability by Defendants.  29 U.S.C. § 794(a).

86.     The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability . . . shall, solely by reason of [] disability, be excluded the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

87.     The Department of Justice's regulations implementing the Rehabilitation Act clarify that the BOP and all its activities are "program[s] or activit[ies] conducted by an Executive Agency" of the United States government, and that "the agency shall furnish appropriate auxiliary aids where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 28 C.F.R. § 39.160(a)(1). The Department of Justice's regulations implementing the Rehabilitation Act additionally mandate that "[i]n determining what type of auxiliary aid is necessary, the agency shall give primary consideration to the requests of the handicapped person." 28 C.F.R. § 39.160(a)(1)(i) (emphasis added).

88.     Auxiliary aids include, but are not limited to, interpreters and telecommunication devices for deaf persons. 28 C.F.R. § 39.103.

89.     Defendants have discriminatorily impaired and continue to discriminatorily impair Plaintiffs' ability to communicate effectively with medical staff and healthcare providers, including physicians; educational and vocational instructors and their fellow students; work program managers and coordinators and their fellow employees; correctional officers; and other members of the institution staff. Furthermore, Defendants have excluded and continue to exclude Plaintiffs from religious, educational, and vocational programs, telephone services, access to functioning hearing aid batteries, access to an Icom device for television viewing, and

institution-wide alarms and announcements. Defendants have done this by failing to provide appropriate auxiliary aids to Plaintiffs in violation of the Rehabilitation Act.

90.     Defendants' failure to provide Plaintiffs qualified interpreters and appropriate auxiliary aids to ensure an effective means of communication has denied and continues to deny Plaintiffs, on the basis of their deafness, the same access to Defendants' services, benefits, activities, programs and privileges as is afforded to hearing individuals.

91.     The failure to provide qualified interpreters and appropriate auxiliary aids and services to ensure an effective means of communication, and the failure to provide comparable access to services, benefits, activities, programs and privileges are policies, regular practices and/or customs of Defendants. These failures are ongoing and continue to this date.

92.     Defendants have continually failed to provide Plaintiffs with a qualified ASL interpreter and other reasonable auxiliary aids for their deafness resulting in Plaintiffs being:

- unable to communicate effectively with healthcare providers, raise medical issues, understand the treatments and medications they prescribe, or discuss mental health problems;
- excluded from participating in the same religious, educational, vocational, and rehabilitation classes and work programs as hearing detainees;
- deprived of knowledge of institution-wide safety or emergency announcements; deprived of knowledge of institution counts, meals and other important daily activities;
- unable to communicate effectively with correctional officers and staff members;
- subject to disciplinary action stemming from Defendants' refusal to accommodate their deafness;
- deprived of meaningful participation in disciplinary proceedings;
- prevented from obtaining consistent access to new hearing aid batteries;
- prevented from obtaining consistent access to closed-captioned televisions; and
- prevented from contacting family, friends, and their counsel.

93.     As a proximate result of Defendants' violations of the Rehabilitation Act,

Plaintiffs have suffered, and continue to suffer, discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs and privileges), financial loss, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and serious injury to their health and mental health, including the injuries specified herein.

94.     Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Plaintiffs, and Defendants are liable to Plaintiffs for harms suffered. Defendants' failure to comply with the Rehabilitation Act will continue to result in harm to Plaintiffs, as Plaintiffs will be in the custody or supervision of the BOP and will continue to seek to use the services, benefits, activities, programs and privileges provided by Defendants and to which they are entitled. This harm will continue unless and until Defendants are ordered by this Court to modify their policies, practices and procedures as demanded by the Rehabilitation Act.

**COUNT II: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES – DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – DEPRIVATION OF LIBERTY IN CIVIL COMMITMENT) Asserted By Plaintiff Boyd Against All Defendants and, In the Event Mr. Heyer is Committed Under § 4248, by Mr. Heyer Against All Defendants**

95.     Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

96.     Under the Fifth Amendment of the Constitution of the United States, "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law."

97.     Civil commitment constitutes a significant deprivation of liberty that requires due process protection.

98.     Plaintiffs are entitled to due process protections through the duration of their civil

commitment under 18 U.S.C. § 4248 because, *inter alia*, Plaintiffs' ongoing commitment under § 4248 depends directly on the results of various medical and mental health examinations of Plaintiffs conducted by Defendants. *See, e.g.*, 18 U.S.C. 4248(e); 28 C.F.R. § 549.95(b), (c), (d), (e).

99.    Defendants have violated Plaintiffs' due process rights by systematically denying Plaintiffs the means of effective communication, including the services of a qualified ASL interpreter, in the context of the treatment programs for persons committed pursuant to § 4248. Effective communication is necessary to allow Plaintiffs to understand and communicate with the very BOP staff members and mental health providers who will determine the duration and necessity of Plaintiffs' detention.  Without qualified ASL interpreters and other auxiliary aids, Plaintiffs are effectively deprived of the procedural safeguards guaranteed to them through the statutory and administrative commitment scheme.

100.    Defendants' failure to comply with the Fifth Amendment has resulted in harm to Plaintiffs, and will continue to do so, as Plaintiffs will remain in the custody of the Attorney General and will continue to be subjected to these conditions unless and until Defendants are ordered by this Court to modify their policies, practices and procedures pursuant to the Fifth Amendment.

### COUNT III: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – RIGHT TO QUALIFIED INTERPRETER AT DISCIPLINARY HEARINGS)

101.    Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

102.    Under the Fifth Amendment of the Constitution of the United States, "[n]o person

. . . shall . . . be deprived of life, liberty, or property, without due process of law."

103.    The Fifth Amendment guarantees Plaintiffs notice and a meaningful opportunity to be heard in connection with institution disciplinary proceedings.

104.    In addition to failing to adequately inform Plaintiffs of the rules applicable in the Maryland Unit, Defendants have repeatedly refused to provide Plaintiffs qualified sign language interpreters for disciplinary hearings stemming from Plaintiffs' alleged violation of those rules, and imposed various punishments on Plaintiffs when it has been determined that such rules were violated.  Defendants' refusal to provide qualified interpreters at these hearings has deprived Plaintiffs of notice and a meaningful opportunity to be heard in connection with their disciplinary proceedings.

105.    Defendants' failure to comply with the Fifth Amendment has resulted and will continue to result in harm to Plaintiffs, unless and until they are ordered by this Court to modify their policies, practices and procedures.

### COUNT IV: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES – DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – INFORMED CONSENT TO MEDICAL TREATMENT)

106.    Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

107.    Under the Fifth Amendment of the Constitution of the United States, "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law."

108.    The Fifth Amendment guarantees the right to be free from unwanted medical treatment, including the right to be treated only with one's informed consent.

109.    Defendants have systematically denied Plaintiffs an effective means of communication, including the services of a qualified ASL interpreter, which are necessary to

allow Plaintiffs to understand and communicate with medical staff and healthcare providers, including mental health professionals and pharmacists. Without these auxiliary aids, Plaintiffs were and are unable to understand, and thus give their informed consent to, any and all medical treatment to which they have been subjected by Defendants and their employees.

110. Defendants are aware of plaintiffs' disability and need for a qualified interpreter at medical treatments.

111. By depriving plaintiffs of a qualified interpreter during their medical treatments, defendants have acted with deliberate indifference to plaintiffs' rights.

112. Defendants' failure to comply with the Fifth Amendment has resulted in harm to Plaintiffs and will continue to do so, as Plaintiff Boyd will remain in the custody of the Attorney General (and Plaintiff Heyer will remain in the custody of the BOP pending his hearing under § 4248) and will continue to be subjected to these conditions unless and until Defendants are ordered by this Court to modify their policies, practices and procedures pursuant to the Fifth Amendment.

### COUNT V: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES – DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – RIGHT TO PRIVACY IN MEDICAL TREATMENT)

113. Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

114. Under the Fifth Amendment of the Constitution of the United States, "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law."

115. The Fifth Amendment guarantees Plaintiffs a constitutional right to privacy in medical treatment.

116. Defendants' use of other inmates or detainees to interpret for Plaintiffs during

medical and mental health appointments violates Plaintiffs' constitutional right to privacy in medical treatment. Such inmate or detainee interpreters have no obligation to keep confidential any information communicated during Plaintiffs' medical or mental health appointments. Moreover, this breach of Plaintiffs' privacy rights is especially problematic in the institution setting where an inmate or detainee's possession of confidential information about another inmate or detainee can be used in threatening and dangerous ways.

117.    Defendants are aware of plaintiffs' disability and need for a qualified interpreter at medical treatments who will be obligated to keep this medical information confidential.

118.    By depriving plaintiffs of a qualified interpreter during their medical treatments, defendants have acted with deliberate indifference to plaintiffs' rights.

119.    Defendants' failure to comply with the Fifth Amendment has resulted in harm to Plaintiff and will continue to do so, as Plaintiff Boyd will remain in the custody of the Attorney General (and Plaintiff Heyer will remain in the custody of the BOP pending his hearing under § 4248)and will continue to be subjected to these conditions unless and until Defendants are ordered by this Court to modify their policies, practices and procedures pursuant to the Fifth Amendment.

### COUNT VI: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES – DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – RIGHT TO ADEQUATE MEDICAL TREATMENT)

120.    Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

121.    Under the Fifth Amendment of the Constitution of the United States, "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law."

122.    The Fifth Amendment guarantees Plaintiffs a right to reasonably adequate medical

care and treatment, including the right to any necessary assistive devices for Plaintiffs' disabilities.

123. Defendants have failed to provide Mr. Boyd with batteries for his hearing aids that are necessary to help Mr. Boyd hear the direction of certain sounds, thereby violating Mr. Boyd's right to adequate medical care and assistive devices necessary for his disability.

124. Defendants are aware of Mr. Boyd's disability and need for these assistive devices.

125. By depriving Mr. Boyd of these assistive devices, defendants have acted with deliberate indifference to Mr. Boyd's needs.

126. Defendants' failure to comply with the Fifth Amendment has resulted in harm to Plaintiff and will continue to do so, as Plaintiff Boyd will remain in the custody of the Attorney General (and Plaintiff Heyer will remain in the custody of the BOP pending his hearing under § 4248)and will continue to be subjected to these conditions unless and until Defendants are ordered by this Court to modify their policies, practices and procedures pursuant to the Fifth Amendment.

### COUNT VII: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES DUE PROCESS AGAINST ALL DEFENDANTS (FIFTH AMENDMENT – RIGHT TO A REASONABLY SAFE ENVIRONMENT)

127. Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

128. Under the Fifth Amendment of the Constitution of the United States, "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law."

129. The Fifth Amendment guarantees Plaintiffs a right to a reasonably safe living environment.

130.    Defendants have failed to provide adequate visual alarms, pagers, or message boards that would alert Plaintiffs to an emergency, such as a fire or lockdown, thereby violating Plaintiffs' right to a reasonably safe living environment.

131.    Defendants are aware of plaintiffs' disability and need for a these emergency alerts.

132.    By depriving plaintiffs of these emergency alerts, defendants have acted with deliberate indifference to plaintiffs' rights.

133.    Defendants' failure to comply with the Fifth Amendment poses an unreasonable risk of future harm to Plaintiffs' and will continue to do so, as Plaintiff Boyd will remain in the custody of the Attorney General (and Plaintiff Heyer will remain in the custody of the BOP pending his hearing under § 4248) and will continue to be subjected to these conditions unless and until Defendants are ordered by this Court to modify their policies, practices and procedures pursuant to the Fifth Amendment.

## COUNT VIII: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES FREEDOM OF SPEECH AGAINST ALL DEFENDANTS (FIRST AMENDMENT)

134.    Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

135.    Defendants have further impermissibly deprived, and continue to deprive, Plaintiffs of their First Amendment rights of freedom of speech by failing to provide them with telecommunication equipment necessary for them to communicate with family and friends outside of FCI Butner.

136.    Hearing inmates and detainees at FCI Butner have telecommunication equipment that allows communication with people outside of FCI Butner.

137.     Defendants' refusal to provide Plaintiffs with telecommunication equipment to ensure the same level of access as hearing detainees serves no legitimate or compelling need and is not rationally related or narrowly tailored to any identified penological or rehabilitative need.

138.     Because Plaintiffs are housed in a remote area far from their families and friends, and do not communicate effectively in written or spoken English, written correspondence and personal visits are not adequate alternatives for exercising their First Amendment right to communicate with friends and family.

139.     Provision of appropriate telecommunication equipment to Plaintiffs would have negligible effects, if any, on other inmates, detainees, and prison employees at FCI Butner.

140.     Defendants' failure to comply with the First Amendment of the United States Constitution has resulted and will continue to result in harm to Plaintiffs, unless and until they are ordered by this Court to modify their policies, practices and procedures.

## COUNT IX:  VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT AGAINST ALL DEFENDANTS (42 U.S.C. §§ 2000bb ET SEQ.)

141.     Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

142.     Governments may not impose substantial burdens on the religious exercises of institutionalized persons even if the burden results from a rule of general applicability.  42 U.S.C. § 2000bb-1(a).

143.     As a branch, department, agency, or instrumentality of the United States, BOP is a government within the meaning of the Religious Freedom Restoration Act ("RFRA").  42 U.S.C. § 2000bb-2(1).

144.     The claims under RFRA are brought against the BOP and Kane, Eichenlaub,

Revell, Johns, and Stephens in their official capacities as BOP officials.

145. Defendants have impermissibly deprived, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by RFRA, by unlawfully imposing a substantial burden on Plaintiffs' religious exercise. They have done this by failing to provide interpreters or other means for enabling Plaintiffs to effectively participate in weekly worship services.

146. Hearing inmates and detainees at FCI Butner are able to attend and participate effectively in religious services.

147. Defendants' failure to provide Plaintiffs with an interpreter to ensure the same level of participation as hearing detainees is not in furtherance of any compelling governmental interest.

148. Defendants' failure to comply with RFRA has resulted in harm to Plaintiffs, and will continue to result in harm to Plaintiffs, as Plaintiffs will continue to be in the BOP's custody and will continue to attempt to participate in weekly worship services unless and until Defendants are ordered by this Court to make modifications to BOP policies, practices, and procedures pursuant to RFRA.

## COUNT X: VIOLATION OF THE CONSTITUTION OF THE UNITED STATES FREE EXERCISE OF RELIGION AGAINST ALL DEFENDANTS (FIRST AMENDMENT)

149. Under the First Amendment of the United States Constitution, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise therof." U.S. Const. amend. I.

150. Defendants have impermissibly deprived, and continue to deprive, Plaintiffs of their First Amendment rights of free exercise of religion by discriminating against Plaintiffs

because of their mode of speech and by substantially burdening religious exercise.

151.  Hearing inmates and detainees at FCI Butner are able to attend and participate effectively in religious services.

152.  Defendants have failed provide Plaintiffs with an interpreter necessary for them to effectively participate in any religious services offered at FCI Butner.

153.  The assistance of an interpreter at normal religious services would provide an adequate means for exercising their First Amendment right to exercise their religion.

154.  Defendants' failure to comply with the First Amendment of the United States Constitution has resulted and will continue to result in harm to Plaintiffs, unless and until they are ordered by this Court to modify their policies, practices and procedures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A.  The Court adjudge and decree that Defendants, by the organizations, systems, policies, practices and conditions described above, have violated and continue to violate Section 794 of the Rehabilitation Act, the Religious Freedom Restoration Act, and the Constitution of the United States;

B.  The Court enter such injunctive and/or declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure against Defendants and in favor of Plaintiffs as it deems appropriate to remedy past violations of the laws of the United States and to prevent future violations of the same, including by ordering Defendants to provide:

- qualified ASL interpreters to enable Plaintiffs to communicate effectively with medical and mental healthcare professionals, institution staff, educational and

vocational instructors, religious leaders, work program managers and coordinators, and disciplinary officers;

- non-aural notification of emergencies or other important events and announcements, *e.g.*, a vibrating pager, visual alarms, vibrating watch, vibrating bed device, and/or message boards;

- equal and full access to appropriate and effective telecommunication devices for the deaf, such as full and equal access to a videophone, TTY, and CapTel devices;

- fully functioning hearing aid batteries; and

- access to Icom or other comparable devices that would permit Mr. Boyd to hear televisions located in the facilities at Butner.

C. In the alternative, the Court enter such injunctive relief against Defendants to effectuate a transfer of Plaintiffs to an appropriate facility with the proven ability to accommodate deaf detainees such as Plaintiffs;

D. Judgment be entered against Defendants in favor of Plaintiffs for the costs of litigation, including reasonable attorneys' fees under 28 U.S.C. § 2412(d)(1)(A).

E. The Court retain jurisdiction of this matter until Defendants demonstrate that they have fully complied with the orders of this Court, and that there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

F. The Court award Plaintiffs any further relief that the Court deems appropriate.

Dated:  April 11, 2012

Respectfully Submitted,

/s/ Neil A. Riemann
Neil A. Riemann (NC Bar No. 19258)
PENRY RIEMANN PLLC
1330 St. Mary's Street
Suite 260
Raleigh, NC 27605
T:  919-833-9449
F:  919-516-0880
neil.riemann@penryriemann.com

-- and --

/s/ Philip Fornaci
Philip Fornaci
E. Elaine Gardner
Deborah Golden
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
T: 202-319-1000
F: 202-319-1010
philip_fornaci@washlaw.org
elaine_gardner@washlaw.org
deborah_golden@washlaw.org

-- and --

/s/ Ian S. Hoffman
Ian S. Hoffman
Carolyn A. Pearce
David B. Bergman
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
T:  202-942-5000
F:  202-942-5999
ian.hoffman@aporter.com
carolyn.pearce@aporter.com
david.bergman@aporter.com

*Counsel for Plaintiffs Robert Boyd and Thomas Heyer*

## **VERIFICATION**

I, Thomas Heyer, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 26 March, 2012.

_____
Thomas Heyer

I, Robert Boyd, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 26 March, 2012.

_____
Robert Boyd

**CERTIFICATE OF SERVICE**

       I hereby certify that today, April 11, 2012, I electronically filed the foregoing Verified

First Amended Complaint using the Court's CM/ECF system, which caused true and correct

copy of the foregoing to be served on all counsel of record for the existing Defendants.



Date:  April 11, 2012                          /s/ Ian S. Hoffman_____