# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

_____

THOMAS HEYER
and ROBERT BOYD,
                Plaintiffs,

       v.

UNITED STATES BUREAU OF PRISONS *et al.*,

_____

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 5:11-CT-3118-D

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Neil A. Riemann (NC Bar No. 19258)
PENRY RIEMANN PLLC
1330 Saint Mary's Street, Suite 260
Raleigh, NC 27605
(919) 833-9449 (telephone)
(919) 833-9448 (facsimile)
neil.riemann@penryriemann.com

Philip Fornaci
E. Elaine Gardner
Deborah Golden
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
T: 202-319-1000
F: 202-319-1010
philip_fornaci@washlaw.org
elaine_gardner@washlaw.org
deborah_golden@washlaw.org

Ian S. Hoffman
Carolyn A. Pearce
David B. Bergman
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
T: 202-942-5000
F: 202-942-5999
ian.hoffman@aporter.com
carolyn.pearce@aporter.com
david.bergman@aporter.com

*Counsel for Plaintiffs Thomas Heyer and Robert Boyd*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.      STANDARD OF REVIEW FOR DISMISSAL UNDER RULE 12(B)(6) ......................... 3

II.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT UNDER RULE 56 ........... 4

III.    PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE DUE
        PROCESS CLAUSE IN CONNECTION WITH THE § 4248 PROGRAM AND
        ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR (COUNT II) ......... 5

IV.     PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ADMINISTRATIVE
        REMEDIES ......................................................................................................... 6

        A.      Because Plaintiffs are Not "Prisoners," Exhaustion is Not Mandatory ................. 6

        B.      Because Exhaustion Would Serve No Meaningful Purpose, the Court Should
                Not Impose an Exhaustion Requirement Beyond the PLRA ................................. 7

V.      PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATIONS OF SECTION 504
        OF THE REHABILITATION ACT (COUNT I) ................................................... 9

        A.      The Rehabilitation Act Provides for a Private Right of Action ............................. 9

        B.      Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
                Rehabilitation Act Claim ...................................................................................... 14

VI.     PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF THE DUE
        PROCESS CLAUSE ............................................................................................. 16

        A.      Plaintiffs Have Stated Claims for a Violation of Their Right to Informed
                Consent in Medical Treatment and Privacy in Medical Treatment
                (Counts IV and V) ................................................................................................. 17

        B.      Plaintiffs Have Stated Claims for a Violation of Their Right to Assistive
                Devices and a Reasonably Safe Environment (Counts VI and VII) ..................... 21

        C.      Plaintiffs Have Stated a Claim for a Violation of Their Right to an Interpreter
                at Disciplinary Hearings  (Count III) ................................................................... 23

i

VII.    PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF THE FIRST
AMENDMENT AND RELIGIOUS FREEDOM RESTORATION ACT ...................... 24

       A.    Plaintiffs Have Stated Claims for Inadequate Access to Telecommunication
Equipment (Count VIII) ...................................................................................... 24

       B.    Plaintiffs Have Stated a Claim for Violation of the Free Exercise Clause
(Count X) and the Religious Freedom Restoration Act (Count IX) ..................... 26

CONCLUSION ..................................................................................................................... 28

Case 5:11-ct-03118-D   Document 35   Filed 07/19/12   Page 3 of 37

# TABLE OF AUTHORITIES

**Cases:**                                                                                  **Page(s):**

*Alexander v. Choate,*
    469 U.S. 287 (1985)...........................................................................................9

*Am. Coun. of Blind v. Astrue,*
    No. C 05-04696 WHA, 2008 WL 1858928 (N.D. Cal. Apr. 23, 2008)..................................11

*Am. Coun. of Blind v. Paulson,*
    463 F. Supp. 2d 51 (D.D.C. 2006), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008)............................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................4

*Andrew v. Clark,*
    561 F.3d 261 (4th Cir. 2009) ...........................................................................3, 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................3, 4

*Baird v. Rose,*
    192 F.3d 462 (4th Cir. 1999) .............................................................................10

*Bell Atl. Corp. v. Twombly,*
    55 U.S. 544 (2007)........................................................................................3, 4

*Candelaria v. Greifinger*,
    No. 96-cv-0017 (RSP/DS), 1998 WL 187383 (N.D.N.Y. 1998)...........................................22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................4

*Clark v. Skinner,*
    937 F.2d 123 (4th Cir. 1991) .............................................................................13

*Clarkson v. Coughlin*,
    898 F. Supp. 1019 (S.D.N.Y. 1995)................................................................18, 19, 20

*Collazo-Leon v. U.S. Bur. of Prisons*,
    51 F.3d 315 (1st Cir. 1995) ..............................................................................17

*Cousins v. Sec'y of DOT*,
    880 F.2d 603 (1st Cir. 1989) .............................................................................13

iii

*Cruz v. Beto*,
  405 U.S. 319 (1972) ............................................................................................26, 27

*Cyrus v. Stansberry*,
  No. 5:08-CT-3151-FL, 2010 WL 3672256 (E.D.N.C. Sept. 20, 2010) ...................................17

*Davis v. Astrue*,
  Nos. C-06-6108 EMC, C-09-0988 EMC, 2011 WL 3651064
  (N.D. Cal. Aug. 18, 2011) ......................................................................................11

*Disabled in Action v. Pierce*,
  606 F. Supp. 310 (E.D. Pa. 1985) ..........................................................................11

*Doe v. Atty. Gen. of the U.S.*,
  941 F.2d 780 (9th Cir. 1991) .................................................................................13

*Duffy v. Riveland*,
  98 F.3d 447 (9th Cir. 1996) ...................................................................................20

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ..................................................................................4

*Francis v. Johns*,
  No. 5:11-CT-3005-FL, 2012 WL 2131127 (E.D.N.C. June 8, 2012)...................................6, 7

*Franklin v. Dist. of Columbia*,
  163 F.3d 625 (D.C. Cir. 1998) ............................................................................18, 19

*Harris v. O'Grady*,
  803 F. Supp. 1361 (N. D. Ill. 1992) .......................................................................22

*Hicks v. James*,
  No. 06-6786, 255 Fed. App.'x 744 (4th Cir. Nov. 28, 2007) ...............................................6, 7

*Howard v. Bur. of Prisons*,
  No 3:05-CV-1372, 2008 WL 318387 (M.D. Pa. Feb. 4, 2008)...............................................11

*Lane v. Pena*,
  518 U.S. 187 (1996).............................................................................................10, 12

*Large v. Wash. Cnty. Det. Ctr.*,
  915 F.2d 1564 (4th Cir. 1990) ...........................................................................21, 22

*Johnson v. Galli*,
  596 F. Supp. 135 (D. Nev. 1984).............................................................................25

*Madison v. Riter*,
  355 F.3d 310 (4th Cir. 2003) ................................................................................27

iv

*Mathis v. GEO Group, Inc.*,
   No. 2:08-CT-0021-D, at 11-16 (E.D.N.C. Nov. 9, 2009) (unpublished)............................13, 14

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)...................................................................................................................4

*Michau v. Charleston Cnty. S.C.*,
    434 F. 3d 725 (4th Cir. 2006)....................................................................................................7

*Mendez v. Gearan*,
   947 F. Supp. 1364 (N.D. Cal. 1996) .......................................................................................11

*Mitchell v. Dupnik*,
   75 F.3d 517 (9th Cir. 1996) .....................................................................................................17

*Mylan Labs., Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) .......................................................................................................4

*Pandazides v. Va. Bd. of Educ.*,
   13 F.3d 823 (4th Cir. 1994).....................................................................................................12

*Rapier v. Harris*,
   172 F.3d 999 (7th Cir. 1999) ...................................................................................................17

*Rogers v. Dep't of Health & Envtl. Control*,
   174 F.3d 431 (4th Cir. 1999) .....................................................................................................9

*Rogers v. Shoaf*,
   2010 WL 2629519 (M.D.N.C. June 28, 2010) ..................................................................16, 23

*Sandin v. Connor*,
   515 U.S. 472 (1995)....................................................................................................... passim

*Scott v. Harris*,
   550 U.S. 372 (2007).....................................................................................................................4

*Serna v. Goodno*,
   567 F.3d 944 (8th Cir. 2009) ...................................................................................................16

*Tanney v. Boles*,
   400 F. Supp. 2d 1027 (E.D. Mich. 2005)...........................................................................25, 26

*Trayor v. Turnage*,
   485 U.S. 535 (1988)..................................................................................................................25

*Turner v. Safley*,
   482 U.S. 78 (1987)..............................................................................................17, 22, 24, 25

v

*United States v. Heyer*,
No. 5:08hc2183 (E.D.N.C. July 9, 2012) (unpublished) ......................................2, 3

*United States v. Joshua*,
607 F.3d 379 (4th Cir. 2010) ...................................................................8

*United States v. Langley*,
62 F.3d 602 (4th Cir.1995) ....................................................................12

*Washington v. Reno*,
35 F.3d 1093 (6th Cir. 1994)..................................................................25

*Williams v. Griffin*,
952 F.2d 820 (4th Cir. 1991) ...............................................................4, 14

*Williams v. ICC Comm.*,
812 F. Supp. 1029 (N.D. Cal. 1992) .........................................................22

*Youngberg v. Romeo*,
457 U.S. 307 (1982)..........................................................................16, 17

## S<span>TATUTES</span>, R<span>ULES AND</span> R<span>EGULATIONS</span>

18 U.S.C. § 4246.................................................................................6

18 U.S.C. § 4248........................................................................... passim

29 U.S.C. § 794(a) ........................................................................ passim

42 U.S.C. § 1997e(a) ...........................................................................6

42 U.S.C. § 12181(7)(F) .......................................................................19

28 C.F.R. § 36.303(b) ..........................................................................19

28 C.F.R. § 36.303(c) ..........................................................................19

28 C.F.R. § 39.103 .............................................................................10

28 C.F.R. § 39.160(a)(1) .......................................................................10

28 C.F.R. § 39.170(d) ...........................................................................7

28 C.F.R. § 39.170(k) ...........................................................................7

28 C.F.R. § 500.1(c) .............................................................................8

28 C.F.R. § 542.13 ..............................................................................8

Case 5:11-ct-03118-D   Document 35   Filed 07/19/12   Page 7 of 37

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 3, 4, 24

Fed. R. Civ. P. 56.......................................................................................1, 4, 24

Fed. R. Civ. P. 56(a) ...........................................................................................4

Fed. R. Civ. P. 56(c) .........................................................................................14

Fed. R. Civ. P. 56(d) .........................................................................................15

56 Fed. Reg. 37,292, 37,292 (Aug. 6, 1991)......................................................12

124 Cong. Rec. 37,508......................................................................................12

Case 5:11-ct-03118-D   Document 35   Filed 07/19/12   Page 8 of 37

Plaintiffs Thomas Heyer and Robert Boyd ("Plaintiffs") hereby oppose Defendants'

Motion to Dismiss the First Amended Complaint or, in the Alternative, for Summary Judgment

(Doc. # 32). The Court should deny the motion in its entirety.

## INTRODUCTION

Plaintiffs are two deaf men who have been detained at the Federal Correctional Institution

in Butner, North Carolina ("FCI Butner") since 2008. Despite repeated requests over the past

four years, the Bureau of Prisons ("BOP") has *never* provided Plaintiffs with a qualified

American Sign Language ("ASL") interpreter for *any* aspect of their detention and has otherwise

failed to provide appropriate auxiliary aids that would enable Plaintiffs to communicate

effectively. Defendants' conduct constitutes a blatant violation of federal law and the

Constitution of the United States. The consequences of Defendants' illegal conduct are

particularly grave because Plaintiffs have both been civilly committed to the custody of the

Attorney General under 18 U.S.C. § 4248 (hereinafter, "§ 4248"), and their ongoing detention is

directly dependent upon mental health examinations and treatments designed to rehabilitate

Plaintiffs and assess whether they are fit to return to society. By failing to provide Plaintiffs with

qualified interpreters, Defendants wrongly prevent Plaintiffs from fully participating in these

programs to achieve and demonstrate their rehabilitation, or to obtain their release to freedom.

Defendants seek to avoid the substance of these allegations and instead seek dismissal

under Rule 12(b)(6) or summary judgment under Rule 56. Each of Defendants' arguments fails.

First, Defendants *do not dispute* that Plaintiffs have stated a claim for violation of Plaintiffs' due

process as a result of Defendants' admitted failure to provide qualified ASL interpreters in

connection with the civil commitment program under § 4248. Plaintiffs—not Defendants—are

entitled to summary judgment on this claim. Second, Defendants request that the Court dismiss

1

Plaintiffs' claims for failure to exhaust administrative remedies. But as the Fourth Circuit and this Court have held, civil detainees such as Plaintiffs are not subject to the mandatory exhaustion requirements of the PLRA, nor any such requirement imposed in the Court's "discretion." Third, Defendants *do not dispute* that Plaintiffs have stated a claim for violation of the federal Rehabilitation Act, which makes it illegal for the federal government to do precisely what it has done here—discriminate on the basis of disability. Instead, Defendants argue that the Rehabilitation Act does not provide victims of discrimination a private right of action to enforce that Act. Defendants are incorrect as a matter of law. Fourth, in arguing for dismissal of the constitutional claims, Defendants mistakenly rely on *Sandin v. Connor*, 515 U.S. 472, 484 (1995) in arguing that restrictions must be more than just "ordinary incidents of prison life" in order to implicate due process. While this may be true for *prisoners*, Plaintiffs here are *civil detainees* committed to the custody of the Attorney General and therefore are entitled to a higher standard of treatment. Even aside from their incorrect reliance on *Sandin*, Defendants fail to provide any valid relation between their actions and legitimate governmental justifications for violating Plaintiffs' rights.

## STATEMENT OF FACTS

Plaintiffs are federal civil detainees in the custody of the Attorney General at FCI Butner. Verified First Amended Complaint. ("FAC") (Doc. # 24) ¶¶ 2-3, 25, 35. Plaintiffs are not prisoners. *Id*. ¶ 22. Instead, Plaintiffs both have been previously convicted of federal crimes for which they have served their complete sentences, but nevertheless have been detained at FCI Butner since 2008 under 18 U.S.C. § 4248. Plaintiff Boyd was committed to the custody of the Attorney General on January 27, 2012. FAC ¶ 25. Plaintiff Heyer was committed to the custody of the Attorney General on July 9, 2012. *See United States v. Heyer*, No. 5:08hc2183 (E.D.N.C.

July 9, 2012) (Doc. # 81) ("Heyer Order") (Exhibit A).[1] Both Plaintiffs are deaf. FAC ¶¶ 7, 11.

As described in detail in the Verified First Amended Complaint, Defendants have failed or refused to provide, *inter alia*, (1) qualified interpreters or other appropriate auxiliary aids for Plaintiffs' treatment program under § 4248 (FAC ¶ 33), medical appointments (*id.* ¶¶ 36-48), disciplinary proceedings (*id.* ¶¶ 49-51), vocational, educational, and religious programs (*id.* ¶¶ 64-68); (2) appropriate methods of non-aural notification of emergencies or other important events or announcements (*id.* ¶¶ 60-62); and (3) equal and consistent access to telecommunications devices that would permit Plaintiffs to communicate with deaf or hearing people outside of FCI Butner. *Id.* ¶¶ 52-59. Plaintiffs assert ten separate causes of action based on federal law and the Constitution of the United States. *Id.* at ¶¶ 79-154.

## ARGUMENT

## I.  STANDARD OF REVIEW FOR DISMISSAL UNDER RULE 12(B)(6)

Under the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). A plaintiff must provide more than "a formulaic recitation of the elements of a cause of action," but a plaintiff "does not need detailed factual allegations." *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a

---

[1]  In Mr. Heyer's recent civil commitment order, another court in this District held that, in order to comply with § 4248, the BOP "must provide an interpreter through whom Mr. Heyer can meaningfully participate in the treatment program. Without such accommodations, Mr. Heyer's civil commitment would fail to meet the Act's mandate that the Attorney General assume responsibility for his 'custody, care and treatment.' *See* 18 U.S.C. § 4248." Heyer Order at 7 (Ex. A). For the reasons described below, Plaintiff Heyer is *also* entitled to injunctive and/or declaratory relief that Defendants' failure to provide him an interpreter for the § 4248 program deprives him of his due process rights under the Fifth Amendment. Plaintiff Boyd is entitled to the same relief, particularly because no court has ordered Defendants to provide any accommodations to Plaintiff Boyd for his participation in the § 4248 program.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In considering Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the Complaint in the light most favorable to Plaintiffs and "must accept as true all of the allegations contained in the complaint." *Iqbal*, 556 U.S. at 678; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## II.      STANDARD OF REVIEW FOR SUMMARY JUDGMENT UNDER RULE 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a prima facie showing is made, that burden shifts to the non-moving party to affirmatively demonstrate the existence of a genuine issue of material fact necessitating a trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Additionally, "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis in original).

III.  **PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE IN CONNECTION WITH THE § 4248 PROGRAM AND ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR (COUNT II)**

As described in Count II of the FAC, Defendants have violated Plaintiffs' due process rights by failing to provide Plaintiffs with qualified ASL interpreters in the context of the civil commitment program under § 4248.  *See* FAC ¶¶ 2, 95-100.  In particular:

> Defendants have violated Plaintiffs' due process rights by systematically denying Plaintiffs the means of effective communication, including the services of a qualified ASL interpreter, in the context of the treatment programs for persons committed pursuant to § 4248.  Effective communication is necessary to allow Plaintiffs to understand and communicate with the very BOP staff members and mental health providers who will determine the duration and necessity of Plaintiffs' detention.  Without qualified ASL interpreters and other auxiliary aids, Plaintiffs are effectively deprived of the procedural safeguards guaranteed to them through the statutory and administrative commitment scheme.

*Id*. ¶ 99.  Accordingly, Defendants' actions "permit them to detain [Plaintiffs] indefinitely, not because [Plaintiffs] would remain a danger to society but because, without effective communication, [Plaintiffs] would be unable to benefit from any treatment or demonstrate any rehabilitation to Defendants."  *Id*. ¶ 2.

Defendants ***do not dispute*** that Plaintiffs have stated a claim for violation of Plaintiffs' due process rights in this regard.  *See* Defs.' Memo. in Supp. of Mot. to Dismiss ("Defs.' Memo.") 17 n.7 (Doc. # 33).  While Defendants state in conclusory fashion in a footnote that "the Court should grant summary judgment" on this claim, Defendants' own declarants admit that they have not yet provided Plaintiffs with *any* qualified ASL interpreters or other auxiliary aids for any of the civil commitment programs under § 4248, despite the fact that Plaintiff Boyd has now been civilly committed for nearly six months.  *See* Steinour Decl. ¶ 6.  Accordingly, not only should Defendants' request for summary judgment be denied, the Court should grant

5

Plaintiffs' motion for summary judgment as to Count II (filed contemporaneously herewith) and award summary judgment in favor of Plaintiffs.

## IV.    PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

Despite conceding that Plaintiffs have stated at least one claim for violation of due process, Defendants nevertheless request that the Court dismiss the First Amended Complaint entirely for failure to exhaust administrative remedies.  The Court should reject this request.

### A.    Because Plaintiffs are Not "Prisoners," Exhaustion is Not Mandatory

As civil detainees, Plaintiffs are not required to exhaust administrative remedies.  The Prison Litigation Reform Act ("PLRA") generally requires that a "prisoner" exhaust administrative remedies before filing any action under federal law with respect to confinement, 42 U.S.C. § 1997e(a) (2000).  However, the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, *violations of criminal law* or the terms and conditions of parole, probation, pretrial release, or diversionary program."  *Id.* § 1997e(h) (emphasis added).  Because Plaintiffs' detention under § 4248 is not the result of any violation of criminal law and does not relate to any conditions of parole, probation, pretrial release, or a diversionary program, Plaintiffs do not meet the PLRA's definition of "prisoner," and thus are not subject to its exhaustion requirements.  *See Francis v. Johns*, No. 5:11-CT-3005-FL, 2012 WL 2131127, at *2 (E.D.N.C. June 8, 2012) (holding that "[Plaintiff] is a civil detainee [under § 4248], and not subject to the PLRA's mandatory exhaustion requirements") (citing *Hicks v. James,* No. 06-6786, 255 Fed. App'x 744, 748 (4th Cir. Nov. 28, 2007), which reversed the district court's imposition of an exhaustion requirement "[b]ecause [the plaintiff's] detention under § 4246 [a mental health civil commitment statute] is not the result of a violation of criminal law . . . he does not meet the

PLRA's definition of prisoner."). Defendants effectively concede this principle by acknowledging that Plaintiffs "may not be 'prisoners'" for purposes of the PLRA. Defs.' Memo. 3 (citing *Hicks*, 255 F. App'x at 748).[2]

### B. Because Exhaustion Would Serve No Meaningful Purpose, the Court Should Not Impose an Exhaustion Requirement Beyond the PLRA

Defendants ask this Court to go beyond the PLRA and exercise its "discretion" to dismiss Plaintiffs' claims for failure to exhaust. Defs.' Memo. 3. The Court should reject Defendants' request, just as the Court recently did in an almost identical context. In *Francis*, 2012 WL 2131127, at *2, a civil detainee under § 4248 filed suit against the BOP raising multiple claims concerning the conditions of his confinement. As it has done here, Defendants moved to dismiss or for summary judgment, arguing that the Court could require exhaustion in its "sound judicial discretion." *Id.* The Court rejected this argument, holding that it was "foreclosed by the Fourth Circuit's specific and repeated holding to the contrary." *Id.* (citing *Hicks*, 255 F. App'x at 748; *Michau v. Charleston Cnty. S.C.*, 434 F.3d 725, 727–28 (4th Cir. 2006)).

In all events, Defendants' own declarants show, administrative exhaustion is not—and has not been—necessary to permit Defendants to understand or evaluate Plaintiffs' requests for accommodations to provide Plaintiffs with effective communication. Exhaustion would thus serve no meaningful purpose. For example, in their motion, Defendants assert that dismissal for failure to exhaust is warranted because exhaustion may allow the BOP to "identify ways to accommodate [Plaintiffs'] hearing disabilities," and allow for the "possible narrowing of disputes." Defs.' Memo. 6, 8. But Defendants concede that "*[e]ven without formal exhaustion,*"

---

[2]    Defendants' passing reference to a Department of Justice administrative complaint process is likewise easily disposed of. As acknowledged by the Government, that procedure is merely permissive, not mandatory. *See* Defs.' Memo. 5 n.3 (noting that Plaintiffs "may file a complaint" using this process) (citing 28 C.F.R. § 39.170(d), (k)).

they have already begun to identify ways to accommodate Plaintiffs' deafness "in a variety of

ways." Defs.' Memo. 6-8 (quoting McKoy Decl. ¶ 5) (emphasis added). Indeed, Defendants' six

declarants explain that each of the responsible officials within FCI Butner, the BOP, and the

Department of Justice are not only aware of this lawsuit—which was filed over one year ago—

but are apparently already taking specific steps to respond to and remedy Plaintiffs' requests for

relief asserted herein. *See, e.g.*, Jacobs Decl. ¶ 4; Steinour Decl. ¶ 6. Accordingly, there is no

meaningful reason why Plaintiffs' complaint should be dismissed in favor of requiring

administrative exhaustion. Indeed, exhaustion would require Plaintiffs to resubmit the *same*

requests for relief to the BOP (typed instead on the BOP's administrative grievance form) to the

*same* persons who are already in receipt of and familiar with Plaintiffs' requests (such as Mr.

McKoy, a "member of the Unit Team," Defs.' Memo. 5 (citing 28 C.F.R. § 542.13)), and who

have represented to the Court that they are already taking steps to substantively respond to

Plaintiffs' requests. *See, e.g.*, Jacobs Decl. ¶ 4; Steinour Decl. ¶ 6.

     Finally, there are ample reasons to be skeptical that the administrative exhaustion process

would be as fruitful as Defendants suggest. Before filing suit, the Government told Plaintiff

Boyd multiple times that if he filed an administrative grievance it would likely be discarded or

not responded to because, according to the Government, the BOP's administrative remedies did

not apply to civil detainees. FAC ¶ 69.[3] Nevertheless, as confirmed by Defendants' own

---

[3]    Though Defendants now take a different position, it is still unclear whether the BOP's
administrative remedy process applies to Plaintiffs as civil detainees. According to the
applicable regulations, BOP's administrative process applies to "inmates," who are defined as
"persons *in the custody of the Federal Bureau of Prisons*." 28 C.F.R. § 500.1(c). Plaintiffs are
not in the custody of the BOP; rather, they are in the custody of the Attorney General. As the
Fourth Circuit has recognized, these two phrases have distinct legal meanings. *See United States
v. Joshua*, 607 F.3d 379, 388 (4th Cir. 2010) (holding that a person in the physical, but not legal,
custody of the BOP is not subject to § 4248 detention because "[t]he statutory language 'in the
custody of the Bureau of Prisons' . . . requires the BOP to have ultimate *legal* authority over the
person's detention.") (emphasis added).

declarant, Plaintiff Boyd did, in fact, file a request for administrative remedy in September 2010, asserting that he was improperly denied a sign language interpreter during a disciplinary proceeding. Coll Decl. ¶ 10. The Warden, Defendant Johns, denied the request without explanation and Plaintiff Boyd appealed to the Regional Director, Defendant Eichenlaub. Defendant Eichenlaub also denied the request, stating only that "there were no communication concerns or issues identified during the discipline process, and we find no reason to elaborate further." *Id*. at Attach. 6, p.6; *see also* FAC ¶¶ 69-72. Plaintiffs are not required to return to this fruitless process.

## V. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT (COUNT I)

### A. The Rehabilitation Act Provides for a Private Right of Action

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), makes it unlawful for federal agencies, including the BOP, to discriminate on the basis of disability in their programs or activities. Section 504 states that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or *under any program or activity conducted by any Executive agency* or by the United States Postal Service.

29 U.S.C. § 794(a) ("Section 504") (emphasis added). The purpose of Section 504 "is to assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." *Rogers v. Dep't of Health & Envtl. Control*, 174 F.3d 431, 434 (4th Cir. 1999) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)). Section 504 accordingly requires that persons be "provided with meaningful access" to the benefit at issue through reasonable accommodation. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

The Department of Justice's regulations implementing the Rehabilitation Act clarify that the BOP and all its activities are "program[s] or activit[ies] conducted by an Executive Agency" of the United States government, and that "the agency shall furnish appropriate auxiliary aids where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 28 C.F.R. § 39.160(a)(1). These regulations additionally mandate that "[i]n determining what type of auxiliary aid is necessary, the agency shall give primary consideration to the requests of the handicapped person." 28 C.F.R. § 39.160(a)(1)(i). Auxiliary aids include, but are not limited to, qualified interpreters and telecommunication devices for deaf persons. 28 C.F.R. § 39.103.

To state a claim for relief under Section 504, a plaintiff must allege "(1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). Here, Plaintiffs have more than adequately alleged each of these elements, namely that Plaintiffs are both disabled by virtue of their deafness, that they are otherwise qualified for the benefits they seek at FCI Butner, and that Plaintiffs have been excluded from those benefits solely on the basis of their deafness. FAC ¶¶ 79-94. Defendants do not contest the sufficiency of these allegations.

Instead, Defendants argue that Section 504 does not provide a private right of action against the federal government, even for injunctive relief. Defendants are wrong.

Although the Supreme Court held in *Lane v. Pena*, 518 U.S. 187, 190 (1996), that sovereign immunity bars a private right of action for monetary relief against a federal agency, the Government "did not dispute the propriety of . . . *injunctive relief*" sought and obtained via a private right of action under Section 504. *Id.* (emphasis added). Since then, numerous

courts—including the D.C. Circuit in a landmark ruling ordering the Government to alter U.S. currency nationwide—have recognized that a private right of action exists under Section 504 for injunctive and declaratory relief. *See, e.g.*, *Am. Council of Blind v. Paulson,* 463 F. Supp. 2d 51, 57-58 (D.D.C. 2006), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008) (awarding a national organization for the visually impaired declaratory and injunctive relief; directing the Bureau of Engraving and Printing to print currency that is easily identifiable to the visually impaired); *Davis v. Astrue*, Nos. C-06-6108 EMC, C-09-0988 EMC, 2011 WL 3651064, at *5 (N.D. Cal. Aug. 18, 2011) ("conclud[ing] that there is a private right of action under § 504" for claims directly against the federal government and denying motion for judgment on the pleadings on this basis); *Am. Council of Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 1858928 (N.D. Cal. Apr. 23, 2008) (denying defendant's motion to dismiss and allowing plaintiffs' claims seeking injunctive relief under Section 504 to proceed against the federal Social Security Administration where claims sought provision of special services to blind recipients); *Howard v. Bureau of Prisons*, No 3:05-CV-1372, 2008 WL 318387, at *9 (M.D. Pa. Feb. 4, 2008) (dismissing federal inmate's claim for money damages but allowing his claim for injunctive relief to proceed against the BOP under the Rehabilitation Act); *Mendez v. Gearan*, 947 F. Supp. 1364, 1366 (N.D. Cal. 1996) (denying defendant's motion to dismiss and allowing plaintiff to proceed with her claim against the United States Peace Corps for denying her entry based on anti-depressant medication); *Disabled in Action v. Pierce*, 606 F. Supp. 310, 314 (E.D. Pa. 1985) (denying defendants' motion to dismiss and concluding "it appears that § 504 was intended by Congress to be an independent weapon in its barrier-free arsenal").

The history of the Rehabilitation Act confirms that Congress intended to create an equitable remedy against federal agencies for violations of Section 504. As originally enacted

in 1973, Section 504 prohibited discrimination only "under any program or activity receiving Federal financial assistance."  It did not prohibit discrimination by federal agencies themselves. For suits brought pursuant to this original version of Section 504, courts uniformly held that Congress intended for Section 504 —by itself—to provide a private right of action for victims of unlawful discrimination.  *See Lane*, 518 U.S. at, 202 n.3 (Stevens, J., dissenting) (collecting cases); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994).  In 1978, Congress extended Section 504 to prohibit discrimination "under any program or activity conducted by any Executive agency."  As a matter of fact and law, Congress intended this amendment to extend to federal agencies the same protections disabled persons had been afforded against recipients of federal funds under Section 504.  Indeed, "[i]t is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute."  *United States v. Langley*, 62 F.3d 602, 605 (4th Cir.1995).  As one federal agency recognized when creating its implementing regulations for the 1978 amendment: "the intent expressed by supporters of the 1978 amendment in floor debate, including its sponsor, Rep. James M. Jeffords, [was] that the Federal Government should have the same section 504 obligations as recipients of Federal financial assistance."  Enforcement of Nondiscrimination on the Basis of Handicap in Department of Transportation Conducted Programs, 56 Fed. Reg. 37,292, 37,292 (Aug. 6, 1991); *see also* 124 Cong. Rec. 37,508(statement of Sen. Stafford) ("to date we have permitted certain private enforcement of Title V [of the Rehabilitation Act]").  Accordingly, by extending the reach of Section 504 to federal agencies, Congress intended to provide disabled persons a private right of action against federal agencies that discriminate.

Defendants ignore these authorities and history and, instead, base their argument on *Clark v. Skinner*, 937 F.2d 123, 125 (4th Cir. 1991), and *Cousins v. Sec'y of DOT*, 880 F.2d 603, 605 (1st Cir. 1989). Defs.' Memo. 12-13. However, those cases are inapposite. Both *Clark* and *Cousins* deal with challenges to regulatory—*i.e.*, rulemaking—actions of agencies. As such, the adjudicating courts found that the Administrative Procedure Act ("APA") was the appropriate avenue for reviewing the actions of the agencies in promulgating those regulations. Here, Plaintiffs do not challenge agency regulations—rather, Plaintiffs allege that Defendants have failed to comply with Section 504 of the Rehabilitation Act and its implementing regulations and that Defendants failure to do so constitutes discrimination against Plaintiffs. Courts have found this distinction to be significant when analyzing what relief is available to a plaintiff under the Rehabilitation Act. *See Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780, 793-94 (9th Cir. 1991) (distinguishing *Cousins* based on the "distinction between agency as administrator and regulator and agency as proprietary discriminator," and rejecting Government's argument that the APA is the only vehicle to enforce the Rehabilitation Act against federal agencies). Here, Plaintiffs are not contesting the BOP regulations themselves, but base their claims on Defendants' refusal and failure to comply with the law and regulations already promulgated. As such, Plaintiffs have stated a private right of action under the Rehabilitation Act.[4]

Finally, Defendants' reliance on *Mathis v. GEO Group, Inc.*, No. 2:08-CT-0021-D, at 11-16 (E.D.N.C. Nov. 9, 2009) (Doc. # 96 ) (unpublished)—a case concerning *private* prison contractors—is misplaced. In *Mathis*, the Court declined to find an implied right of action

---

[4]     Also misplaced is Defendants' reliance on Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2), which adopts the remedies of Title VI of the Civil Rights Act of 1964. Those

under the Rehabilitation Act against the BOP where the claim was "based on the actions or

inactions of a government contractor performing services under a federal government

procurement contract." *Id*. at *13. Moreover, the Court held that whether it found an implied

private right of action was irrelevant because plaintiffs in that case had failed to allege that the

private prison received "federal financial assistance" within the meaning of the Rehabilitation

Act. Here, unlike *Mathis*, Plaintiffs' Rehabilitation Act claim is asserted directly against the

BOP for BOP's *own* failures to abide by the Act while retaining physical custody over Plaintiffs.

Accordingly, *Mathis* presents a very different fact pattern that offers no support for Defendants'

argument in this case.[5]

> **B.      Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
>          Rehabilitation Act Claim**

In the alternative, Defendants seek summary judgment with respect to the Rehabilitation

Act claim on the grounds that Plaintiffs have not shown that they have been "denied a program

or denied benefits solely by reason of their disabilities." Defs.' Memo. 15. Defendants proffer

six declarations in an attempt to demonstrate that Plaintiffs have been provided with

accommodations sufficient to satisfy Defendants' obligations under the Rehabilitation Act.

Defendants' alternative request for summary judgment on the Rehabilitation Act claim

should be denied. First, there are "genuine dispute[s]" as to numerous material facts. *See* Fed.

R. Civ. P. 56(c). Indeed, *each* of the facts that Defendants assert entitles them to summary

judgment is already disputed by Plaintiffs' verified FAC, which is the "equivalent of an

opposing affidavit for summary judgment purposes." *See Williams*, 952 F.2d at 823. For

provisions are addressed to "recipient[s] of Federal assistance or Federal provider[s] of such
assistance," a branch of the Rehabilitation Act that is not at issue in this case.

[5]     To the extent the Court believes *Mathis* is indistinguishable from the present case, Plaintiffs
respectfully request that the Court reconsider the issue for all of the reasons stated herein.

example, Defendants assert they are entitled to summary judgment based on evidence that the BOP has provided an "inmate companion person" ("ICP")—Mr. Andrew Sheridan—who purportedly "assists [Plaintiffs] by using sign language to enable [Plaintiffs] to communicate with others on a daily basis." Defs.' Memo. 15. However, as set forth in Plaintiffs' verified FAC,

> Mr. Sheradin . . . is not a qualified, certified, or licensed ASL interpreter. Mr. Sheradin's sign language skills are extremely rudimentary and wholly deficient to provide Mr. Heyer or Mr. Boyd with an effective means of communication. Mr. Sheradin has no formal education or training in sign language. In fact, the only sign language skills Mr. Sheradin possesses were learned from the time he spent with Plaintiffs at FCI Butner.

FAC ¶¶ 75-76; *see also id*. ¶¶ 73-78 (containing detailed allegations concerning Mr. Sheridan). Additionally, Defendants assert that they are entitled to summary judgment because "Plaintiffs have access to telecommunications technology for the deaf." Defs.' Memo. 15. This too is contrary to the evidence presented by Plaintiffs, which states that "Plaintiffs' access to the lone TTY device in the Maryland Unit is regularly restricted or denied, and their access to the TTY device does not provide them an equal opportunity to access telephones as is provided to other detainees." FAC ¶ 56; *see also id*. ¶¶ 52-59 (containing detailed allegations concerning Plaintiffs' lack of meaningful access to effective telecommunications devices). Because there are genuine disputes as to numerous material facts, summary judgment must be denied.

Second, Defendants alternative request for summary judgment is—at a minimum—premature. Plaintiffs need to take discovery to fully document the numerous ways Defendants have deprived them of effective communication as described in the FAC. Indeed, as explained in their accompanying Rule 56(d) Motion, Plaintiffs need to depose several witnesses, including Defendants' declarants, and need to develop additional factual and expert evidence to support

Plaintiffs' claims that the minimal accommodations provided to Plaintiffs to date do not satisfy Defendants' obligations under the Rehabilitation Act (or the Constitution). In sum, the evidence presented in Plaintiffs' Verified First Amended Complaint cannot be ignored. Given the premature nature of Defendants alternative request for summary judgment, the request should be denied and Plaintiffs should be given an opportunity to develop the factual record.

## VI. PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF THE DUE PROCESS CLAUSE

Defendants incorrectly rely on case law stating that in order to implicate due process, the restraints imposed on Plaintiffs must be more than "ordinary incidents of prison life." Defs.' Memo. 17-18 (citing *Sandin*, 515 U.S. at 484 and *Franklin v. Dist. of Columbia*, 163 F.3d 625, 631 (D.C. Cir. 1998)). While this may be true for *prisoners*, Plaintiffs here are *civil detainees* committed to the custody of the Attorney General. FAC ¶¶ 16, 22. As such, Plaintiffs are more analogous to pretrial detainees, for whom *Sandin* does not apply.[6] For example, a North Carolina federal court recently rejected application of the *Sandin* analysis in determining whether "a particular condition or restriction of [a pretrial detainee's] confinement is constitutionally impermissible," holding that "the Supreme Court expressly limited *Sandin's* terms to cases involving sentenced prisoners and that *a different legal framework* applies to claims by pretrial detainees." *Rogers v. Shoaf*, 2010 WL 2629519, at *10 n.12 (M.D.N.C. June 28, 2010) (emphasis added). That conclusion is consistent with the decisions of several federal circuits that

---

[6]    *See, e.g.*, *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009) (for purposes of analyzing Fourth Amendment claims, court held that the best analogy for involuntarily committed persons "is to pretrial detainees"); *see also Youngberg v. Romeo*, 457 U.S. 307, 320-21 (1982) (in considering the constitutionality of the conditions of confinement for an involuntarily committed, mentally disabled man, the Court drew an analogy between pretrial detainees and civilly committed persons).

have determined that *Sandin* analysis does not apply to claims by pretrial detainees.[7]  This is also

consistent with the general principle expounded by the Supreme Court that "[p]ersons who have

been involuntarily committed are entitled to more considerate treatment and conditions of

confinement than criminals whose conditions of confinement are designed to punish."

*Youngberg*, 457 U.S. at 321-22.

Even aside from their incorrect reliance on *Sandin*, Defendants also contend that even

unconstitutional practices are permissible so long as they are "reasonably related to legitimate

penological interests."  Defs.' Memo. 17-18 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) and

*Cyrus v. Stansberry*, No. 5:08-CT-3151-FL, 2010 WL 3672256, at *6 (E.D.N.C. Sept. 20,

2010)).  Defendants simply claim that the BOP is entitled to deference in their administrative

decisions and cite a string of instances where courts have upheld limitations to civilly committed

individuals.  Defs.' Memo. 18-19.  But notably lacking in their arguments are valid relations

between the BOP actions and any legitimate governmental justifications for violating Plaintiffs'

due process rights with respect to medical care, disciplinary hearings, and general safety.

Plaintiffs have stated claims for these due process violations.

> **A.    Plaintiffs Have Stated Claims for a Violation of Their Right to Informed Consent in Medical Treatment and Privacy in Medical Treatment (Counts IV and V)**

Defendants are incorrect in their assertion that failure to provide qualified interpreters

during medical treatments does not violate Plaintiffs' due process rights.  *See* Defs.' Memo. at

16-21.  Even assuming *Sandin* applies to involuntarily incarcerated individuals—it does not—

courts have recognized that the due process rights of incarcerated persons are violated when they

---

[7]      *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1003-04 (7th Cir. 1999); *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996); *Collazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995).

are not provided with a qualified interpreter during medical treatment and testing. In *Clarkson v. Coughlin*, 898 F. Supp. 1019 (S.D.N.Y. 1995), for example, a federal court granted summary judgment in favor of a deaf inmate who alleged due process violations when he was not provided with a qualified interpreter during medical treatment and testing. 898 F. Supp. at 1048-49. The *Clarkson* court determined that "[w]ithout the aid of a qualified interpreter, it is not possible that the relevant [medical] information could have been conveyed in an effective manner" to the deaf inmate, and therefore the prisoner's "protected liberty interest is implicated by Defendants' failure to provide the necessary [medical] information through a qualified interpreter." *Id.*[8]

Defendants' reliance on *Franklin v. District of Columbia*, 163 F.3d 625, 631 (D.C. Cir. 1998), in support of their claim that it need not provide qualified interpreters at medical appointments is misplaced. First, the rights of non-English speaking inmates (at issue in *Franklin*) are not properly analogized to deaf detainees. Plaintiffs are permanently disabled and will *never* be able to communicate effectively with medical staff without the assistance of an interpreter, which is precisely why the BOP is obligated by law not to discriminate against them.

Indeed, Defendants' betray their fundamental misunderstanding of the law by relying on *Franklin*'s "pragmatic perspective" that "outside of prison it is doubtless an ordinary incident of everyday life for non-English speaking persons to receive help from others in order to communicate with their doctors." Defs.' Memo. 21 (quoting *Franklin*, 163 F.3d at 638). In fact, the Department of Justice's *own* regulations promulgated under the Americans with Disabilities

---

[8]     *Clarkson* also recognized that inmates have a constitutional right to privacy in medical treatment, and that that right is violated when prisons use other inmates during medical visits who do not have an obligation to keep matters discussed in their presence confidential. 898 F. Supp. at 1049 (granting summary judgment in favor of deaf plaintiffs-inmates and holding that "[u]nless the person interpreting for purposes of medical care is bound to maintain the confidentiality of the information being exchanged, the inmate/patient's constitutional privacy right is violated.").

Act ("ADA") *require* health care providers and other places of public accommodation to provide to deaf persons appropriate auxiliary aids and services, including "qualified interpreters," to the extent necessary to ensure effective communication. 28 C.F.R. § 36.303(b)-(c); *see also* 42 U.S.C. § 12181(7)(F) ("public accommodation" defined to include a "professional office of a health care provider" and a "hospital"). Those regulations also state that a health care provider "shall not require an individual with a disability to bring another individual to interpret for him or her." *Id*. § 36.303(c)(2). Thus, Defendants are denying Plaintiffs the very auxiliary aids to which Plaintiffs would be entitled outside of prison.

Second, under no circumstances can *Franklin* be read broadly to hold that inmates' due process rights are never violated when interpreters are not provided at medical appointments. Instead, the *Franklin* court simply found—*after hearing evidence* at a bench trial of the prison's extensive efforts to provide interpreting services during medical treatments—that the District of Columbia had not "acted with the 'obduracy' and 'wantonness' that mark deliberate indifference" under the Eighth Amendment when it failed to "implement fully" its policy to provide inmates with interpreter assistance during medical visits. 163 F.3d at 636.

Moreover, the *Franklin* court explicitly relied on *Sandin* in analyzing whether a privacy violation occurred when other inmates were asked to interpret at medical appointments. *See* 163 F.3d at 638 (citing *Sandin*). As discussed *supra* at 16-17, the *Sandin* analysis does not apply to determining whether the rights of detainees have been violated. In any event, *Clarkson*'s due process analysis specific to *deaf* inmates more aptly applies here, rather than *Franklin*'s analysis relating to non-English speakers. *See supra* note 8 (discussing *Clarkson* and deaf inmates' right to privacy in medical treatment); *cf. Franklin*, 163 F.3d at 638 (relying on the logistical difficulty

of requiring prisons to hire bilingual medical personnel for all non-English speaking inmates in reasoning against requiring confidential interpreters).

Defendants also have provided no support for their alternative argument that summary judgment should be granted on Counts IV and V; to the contrary, the evidence they have submitted demonstrates that they have *failed* to provide the services that they are required to provide under law. As established above, due process requires that *qualified* interpreters, who are bound to keep medical information private, be provided to Plaintiffs during their medical visits. *Clarkson*, 898 F. Supp. at 1048-49. Plaintiffs allege here that such qualified interpreters have not been provided. FAC ¶¶ 106-19. In response, Defendants only submit that the BOP has provided Plaintiffs with an inmate companion person ("ICP") for "assistance with daily tasks," and "are considering other ways to accommodate Plaintiffs in health care and treatment settings." Defs.' Memo. at 25 (citing Exhibits E and C). Defendants have submitted no evidence that the ICP is a qualified interpreter, and Plaintiffs have presented evidence in their verified complaint that the ICP is *not* qualified and is *inadequate*. *See* FAC ¶¶ 36-48. Finally, sworn statements that the BOP is "considering" other accommodations, *see* Defs.' Memo. at 25; *see also* Jacobs Decl. ¶ 4, cannot shield Defendants from summary judgment and a court order requiring Defendants to provide adequate services in a timely and permanent manner. The evidence before the Court at the very least raises a genuine issue of material fact as to whether Plaintiffs have been provided adequate accommodations during their medical appointments sufficient to satisfy their due process rights precluding summary judgment. *See, e.g.*, *Duffy v. Riveland*, 98 F.3d 447, 450 (9th Cir. 1996) (issue of fact whether counselor who "had no formal training in sign language and is not a professional interpreter," was "employed by the Washington State Department of Corrections, [and] learned how to sign through her relationship with her parents"

could accurately sign for deaf inmate as well as be impartial, as are required for an interpreter to be "qualified" under the ADA definition).

### B. Plaintiffs Have Stated Claims for a Violation of Their Right to Assistive Devices and a Reasonably Safe Environment (Counts VI and VII)

Defendants are also incorrect in their assertion that Plaintiffs' due process rights are not violated when they are denied adequate medical assistive devices for their disabilities and a reasonably safe environment. Defs.' Memo. at 23-25. As they cannot deny that Plaintiffs have rights to such accommodations, Defendants simply argue that Plaintiffs "have not alleged that Defendants acted with deliberate indifference." Defs.' Memo. at 23.

Plaintiffs have alleged facts sufficient to support deliberate indifference on the part of Defendants. Indeed, Counts VI and VII and the supporting facts explicitly allege that Defendants are *aware* of Plaintiffs' disability and need for these assistive devices and emergency alerts, but repeatedly have failed to provide these accommodations and therefore have acted with deliberate indifference to their needs. *See, e.g.*, FAC ¶¶ 123-26; 130-32. The First Amended Complaint, in its totality, also contains numerous specific allegations supporting Defendants' deliberate indifference to Plaintiffs' disability and need for special accommodations—*e.g.*, the fact that Plaintiffs have repeatedly requested other accommodations for their disabilities and that such accommodations consistently have been denied, *e.g.*, FAC ¶¶ 33, 41-42, 56, 63; the fact that BOP counselors have stated that they do not believe that Mr. Boyd is deaf, FAC ¶ 50—and these allegations are clearly sufficient to allege a plausible claim for deliberate indifference.

Furthermore, federal courts (including the Fourth Circuit) have repeatedly held that simple allegations of failure to supply necessary assistive and/or safety devices to disabled inmates are sufficient to allege deliberate indifference. *See, e.g.*, *Large v. Washington Cnty. Det.*

*Ctr.*, 915 F.2d 1564, at *2 (4th Cir. 1990) (unpublished table decision) (holding that "under appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need, hence a violation of the eighth amendment rights" and listing cases recognizing that the failure to provide assistive devices may amount to deliberate indifference to a serious medical need); *Williams v. ICC Comm.*, 812 F. Supp. 1029, 1032 (N.D. Cal. 1992) (deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment" and legally blind plaintiff's allegation that he was denied eyeglasses is sufficient to "state a cognizable claim for the deliberate indifference to medical needs"); *Harris v. O'Grady*, 803 F. Supp. 1361, 1366 (N. D. Ill. 1992) ("Harris has sufficiently alleged that [defendants] were deliberately indifferent to Harris's condition as a blind inmate by refusing to listen to his pleas for corrective lenses, handicapped housing, and medical attention, despite their alleged knowledge of his situation"); *Candelaria v. Greifinger*, No. 96-cv-0017 (RSP/DS), 1998 WL 187383, at *3 (N.D.N.Y. 1998) (allegations of paralyzed inmate that defendants failed to provide him with medical supplies and failed to provide a vehicle that would transport him safely to his appointments at an outside medical facility were sufficient to state a claim of deliberate indifference).

Even applying the *Turner* factors, Defendants have provided no valid and rational connection between Defendants' refusal to provide Plaintiffs with hearing aid batteries or devices to alert Plaintiffs of an emergency such as fire or lockdown, and have not shown that any the alternative "accommodations" they have provided are constitutionally sufficient. Therefore, at a minimum there is a genuine question of fact as to whether the Defendants' denial of auxiliary aids and appropriate emergency devices for the deaf constitutes a due process violation.

**C.    Plaintiffs Have Stated a Claim for a Violation of Their Right to an Interpreter at Disciplinary Hearings  (Count III)**

Defendants incorrectly rely on *Sandin* in support of their argument that their failure to provide interpreters during disciplinary proceedings does not implicate the due process clause. Defs.' Memo. 21-23.  As discussed *supra* at 16-17, a North Carolina federal court has acknowledged that "the Supreme Court expressly limited *Sandin's* terms to *cases involving sentenced prisoners . . . ."  Rogers v. Shoaf*, 2010 WL 2629519, at *10 n.12 (emphasis added); *see also supra* at 19.  The *Sandin* analysis does not apply to determining whether Plaintiffs' rights have been violated.

As *Sandin* does not apply, nor does its requirement that a deprivation of liberty at issue in a disciplinary proceeding be particularly "atypical" or "significant" in order to implicate due process.  Defs.' Memo. at 21.  But even if *Sandin* did apply, the deprivation analysis is individual to each case:  the nature of the discipline to which the inmate might be subjected, as well as the sentence the inmate is serving, are considerations in determining whether a liberty interest is implicated.  *Sandin*, 515 U.S. at 485-87.  Here, the deprivation resulting from Plaintiffs' disciplinary hearings included revocation of telephone privileges.  FAC ¶ 51.  Given that Plaintiffs are *not serving a sentence* for any crime committed (but rather are involuntarily committed for treatment), combined with the fact that Plaintiffs are already unable to effectively communicate with others *within* the prison system, the *additional* deprivation of phone privileges resulting from a disciplinary hearing without a qualified interpreter is a "significant" enough deprivation meriting protections under the due process clause.

Defendants' allegations that, in any event, Plaintiffs can use their inmate companion to assist them in disciplinary matters and that this is constitutionally sufficient, is also unpersuasive.

As Plaintiffs have explained *supra* 19-20, Plaintiffs have alleged that their ICP is not a qualified interpreter and is insufficient to allow them to effectively communicate with members of BOP staff. FAC ¶¶ 73-78. Moreover, the need for a qualified and *impartial* interpreter, who is bound by a duty of confidentiality, is particularly acute in the disciplinary setting. These allegations, at the very least, raise a genuine issue of material fact as to this claim.

## VII. PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF THE FIRST AMENDMENT AND RELIGIOUS FREEDOM RESTORATION ACT

### A. Plaintiffs Have Stated Claims for Inadequate Access to Telecommunication Equipment (Count VIII)

Defendants fail to provide either adequate argument or evidence that the *Turner* factors mandate dismissal of Plaintiffs' claim of inadequate access to appropriate telecommunications equipment under either Rule 12(b)(6) or Rule 56. *See* Defs.' Memo. at 26-28.

As an initial matter, Defendants' arguments focus exclusively on Plaintiffs' degree of access to the lone TTY device at FCI Butner. But Plaintiffs' claim is not so limited. Plaintiffs not only allege that Defendants regularly restrict or deny them access to the TTY device, FAC ¶ 56, but Plaintiffs also allege that Defendants have failed to provide them with other appropriate telecommunications equipment, such as videophones, that would enable Plaintiffs to adequately communicate with deaf and hearing persons outside of FCI Butner. *See id*. ¶¶ 52-59; 134-140. For example, the lone TTY device at FCI Butner does not permit communications with other TTY devices, so Plaintiffs are completely prohibited from communicating with any deaf individuals outside of FCI Butner. *Id*. ¶ 55. Because Defendants fail to address any of these sworn allegations, the Court should deny Defendants' Motion to Dismiss Count VIII.

Moreover, with regard to the TTY device, Plaintiffs have stated a claim. It is a question of fact whether a deaf inmate's allegations of inadequate access to a TTY communication device

are justified under the *Turner* factors. In *Tanney v. Boles*, 400 F. Supp. 2d 1027 (E.D. Mich. 2005)—a case presenting nearly identical facts—a deaf inmate who used ASL to communicate alleged that he was permitted to use the TDD/TTY device (which was housed in a separate office) only when a staff person could sit with him for the duration of the call, and that his requests to use the TTY were often denied. *Id.* at 1032-33. Evidence was also presented that while hearing prisoners who wanted to use the phone could do so "almost daily," the plaintiff was only allowed to use the phone five times over a two-week period even though he made numerous other requests. *Id.* at 1033-34. Both parties moved for summary judgment.

The court rejected defendant's argument that plaintiff's claim should be dismissed for failing to show that the prison's actions did not further a legitimate penological interest, holding that "[t]here is a question of fact regarding whether Defendant's policy of keeping the TDD/TTY system in her locked office with assess [sic] limited in the manner alleged served a legitimate penological interest." *Id.* at 1041-44. The court agreed with plaintiff that "persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends." *Id.* at 1041 (quoting *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)); *see also* 400 F. Supp. 2d at 1041-42 ("there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment") (quoting *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984)). The court further held that "there is a question of fact regarding whether the arbitrary means by which access was given served a legitimate governmental interest," whether "the extent to which accommodating Plaintiff actually created staffing and security problems," and finally whether "there were viable scheduling alternatives to the sporadic procedures employed by Defendant that would have satisfied both Plaintiff's rights and Defendant's security concerns." *Id.* at 1043-44.

Here, as in *Tanney*, there is a question of fact as to whether there is a legitimate penological interest in the Defendants' arbitrarily and sporadically allowing Plaintiffs access to the TTY device, and whether any purported access to alternative means of communications is sufficient to satisfy Plaintiffs' First Amendment rights. This is especially true given that Plaintiffs have alleged that other detainees are permitted significantly more phone time per month, FAC ¶56; that the counselors with access to the TTY device "consistently deny [Plaintiffs] access altogether without justification," *id.*, that writing "is not an effective means of communication" for Mr. Heyer because of his lack of English competency, *id.* ¶ 57, and that the inmate companion person provided is not qualified in ASL and insufficient to help Plaintiffs communicate. *Id.* ¶¶ 73-76. These allegations must be taken as true at this stage of the proceedings, and therefore this claim cannot be dismissed.

### B. Plaintiffs Have Stated a Claim for Violation of the Free Exercise Clause (Count X) and the Religious Freedom Restoration Act (Count IX)

Defendants have substantially burdened Plaintiffs' exercise of religion by not providing access to interpreters during religious services offered, in violation of the First Amendment and the Religious Freedom Restoration Act (RFRA). Defendants argue that their free exercise and RFRA claims fail because "Plaintiffs do not allege that they are unable to attend or have access to religious services" and "have not sufficiently alleged that the lack of a sign language interpreter amounts to a substantial burden on the exercise of their religion." Defs.' Memo. 27, 29. But Defendants cannot reasonably argue that simply because Plaintiffs are able to physically "attend" or "access" religious services—even though they can neither understand what is being said nor respond accordingly—that they can effectively participate in these services and are not substantially burdened in their desire to exercise religion. *See, e.g.*, *Cruz v. Beto*, 405 U.S. 319,

322 (1972) ("reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed" by the First Amendment); *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003) (RFRA prohibits government from substantially burdening a person's exercise of religion unless the government can demonstrate that it is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest). Quite simply, in the FAC, Plaintiffs allege that Defendants have repeatedly refused to provide them with qualified interpreters, despite being fully aware that Plaintiffs are deaf and require qualified interpreters in order to effectively communicate with those inside and outside of FCI Butner. By refusing to provide Plaintiffs with qualified interpreters to assist them during religious services and other prison activities, Defendants have substantially burdened Plaintiffs in their religious exercise and effectively prevented Plaintiffs from fully accessing such services, even though other detainees can fully access these programs. Defendants have offered no legitimate reason for failing to provide such services. Plaintiffs have sufficiently stated claims for violation of the Free Exercise Clause and RFRA.

Finally, Defendants seek summary judgment on these claims, alleging that Plaintiffs may use their ICP to assist them in communicating at such services. Defs.' Memo. 28, 29. Plaintiffs have adequately alleged that the use of ICPs is insufficient to enable them to communicate (and Defendants have failed to rebut this allegation). *See* FAC ¶¶ 73-78. Defendants also argue that Plaintiffs have never approached the FCI chaplain —who has only been the chaplain at FCI Butner since February 2011—about accommodations for their disabilities, and therefore the Court should grant summary judgment on this grounds. Defs.' Memo. 28, 29. At a minimum, it is a question of fact whether such accommodations were requested by Plaintiffs and denied by Defendants. Plaintiffs' complaint alleges that despite their requests in numerous different

contexts, Defendants have repeatedly and uniformly refused to provide them with interpreters and other accommodations for their disability. At this stage, summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, the Court should (1) deny Defendants' Motion to Dismiss; (2) deny Defendants' Motion for Summary Judgment or, in the alternative, continue Plaintiffs' time to respond to Defendants' Motion for Summary Judgment; and (3) grant Plaintiffs' Motion for Summary Judgment as to Count II, filed contemporaneously herewith.

Dated: July 19, 2012                                      Respectfully Submitted,

/s/ Neil A. Riemann                                      /s/ Ian S. Hoffman
Neil A. Riemann (NC Bar No. 19258)                       Ian S. Hoffman
PENRY RIEMANN PLLC                                       Carolyn A. Pearce
1330 Saint Mary's Street, Suite 260                      David B. Bergman
Raleigh, NC 27605                                        ARNOLD & PORTER LLP
(919) 833-9449 (telephone)                               555 Twelfth Street, N.W.
(919) 833-9448 (facsimile)                               Washington, DC 20004
neil.riemann@penryriemann.com                            T: 202-942-5000
                                                         F: 202-942-5999
Philip Fornaci                                           ian.hoffman@aporter.com
E. Elaine Gardner                                        carolyn.pearce@aporter.com
Deborah Golden                                           david.bergman@aporter.com
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
T: 202-319-1000
F: 202-319-1010
philip_fornaci@washlaw.org
elaine_gardner@washlaw.org                               *Counsel for Plaintiffs Thomas Heyer and*
deborah_golden@washlaw.org                               *Robert Boyd*

## CERTIFICATE OF SERVICE

I hereby certify that today, July 19, 2012, I electronically filed the foregoing using the Court's CM/ECF system, which caused true and correct copy of the foregoing to be served on all counsel of record.

Date:  July 19, 2012                                        /s/ Ian S. Hoffman_____