UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| THOMAS HEYER and ROBERT BOYD, Plaintiffs, v. UNITED STATES BUREAU OF PRISONS *et al.*, | Civil Action No. 5:11-CT-3118-D |

**DECLARATION OF IAN S. HOFFMAN IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 56(d) FOR DENIAL OF OR, IN THE ALTERNATIVE, FOR CONTINUANCE TO RESPOND TO DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

IAN S. HOFFMAN hereby declares and states as follows:

1. I am an associate with the law firm of Arnold & Porter LLP and counsel of record for the plaintiffs Thomas Heyer and Robert Boyd ("Plaintiffs"). I make this declaration in support of Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 56(d) for Denial of or, in the Alternative, for Continuance to Respond to Defendants' Alternative Motion for Summary Judgment. I make this declaration based on personal knowledge and facts provided to me by other counsel of record in this case.

2. Before any discovery has been conducted—and, indeed, even before an answer has been filed—Defendants have moved for summary judgment, relying on declarations submitted by witnesses who have not been deposed or otherwise subjected to cross-examination concerning their allegations. *See* Doc. ## 33-3 through 33-7; 34.

3. The existing evidence in this case—namely, Plaintiffs' Verified First Amended Complaint ("FAC") (Doc. # 24) and Defendants' declarations—already demonstrates genuine

1

disputes as to numerous material facts, thereby precluding summary judgment.

4. Nevertheless, to the extent the Court concludes that the existing evidence is insufficient to deny Defendants' Motion for Summary Judgment, Plaintiffs need discovery to present facts essential to justify their opposition to Defendants' Motion.

5. Following is: (1) a summary of the evidence on which Defendants base their alternative Motion for Summary Judgment, (2) a description of the existing evidence that disputes Defendants' evidence, and (3) a non-exclusive list of discovery Plaintiffs intend to take to discover facts that will be essential to further disputing and refuting Defendants' evidence.

A. <u>Inmate Companion Person ("ICP")</u>

- **Defendants' Evidence**: An inmate companion person ("ICP") assists both Plaintiffs by using American Sign Language ("ASL") "to enable them to communicate with others on a daily basis." McKoy Decl. ¶ 6 (Doc. # 33-4)

- **Plaintiffs' Existing Evidence**: ICP Andrew Sheradin is not a qualified, certified, or licensed ASL interpreter. Mr. Sheradin's sign language skills are extremely rudimentary and wholly deficient to provide Plaintiffs with an effective means of communication. FAC ¶¶ 73-78.

- **Plaintiffs' Intended Discovery:**

    - Deposition of Mr. McKoy to cross examine his statement that ICP Sheridan enables Plaintiffs to communicate with others, including to determine whether Mr. McKoy has any expertise or qualifications concerning ASL. Also, to cross examine his statement that ICP Sheridan is "still available . . . to assist when needed."

    - Deposition of ICP Sheridan to discover his abilities and qualifications to provide effective ASL interpreting services, including his ability to provide such services while ICP Sheridan himself must participate in the § 4248 program.

    - Expert witness examination of ICP Sheridan to assess his abilities to provide effective ASL interpreting services.

    - Document requests seeking all documents concerning the ICP program in general and ICP Sheridan in particular.

B.  Access to TTY

- **Defendants' Evidence**: Plaintiffs are given "regular access" and "access when needed" to a telecommunications device for the deaf ("TTY"). McKoy Decl. ¶ 8.

- **Plaintiffs' Existing Evidence**: Plaintiffs' access to the lone TTY device is regularly restricted or denied, their access to the TTY device does not provide them an equal opportunity to access telephones as is provided to other detainees, and the TTY device does not permit calls to other TTY devices, thereby precluding all communication with deaf persons. Additionally, Plaintiffs have deaf friends that they are unable to communicate with because they do not own TTYs but instead use videophones. FAC ¶¶ 52-59.

- **Plaintiffs' Intended Discovery:**

    - Deposition of Mr. McKoy to discover cross examine his statement that Plaintiffs are given "regular access" and "access when needed" to a TTY.

    - Document requests seeking all documents concerning FCI Butner's policies and procedures concerning the TTY device, as well as all call logs that would demonstrate whether Plaintiffs have been given access to the TTY.

    - Potential expert discovery concerning insufficiency of TTY devices to deaf individuals such as Plaintiffs.

    - Potential discovery concerning the logistics and costs of obtaining alternative telecommunication devices, such as CapTel or videophones, that would allow Plaintiffs to remain in contact with their friends and family outside of FCI Butner.

C.  Emergency Notifications

- **Defendants' Evidence**: Plaintiff Heyer's roommate is assigned to alert Plaintiff Heyer to any institutional emergencies. McKoy Decl. ¶ 7

- **Plaintiffs' Existing Evidence**: The facilities at FCI Butner, including Plaintiffs' rooms, lack visual alarms, vibrating pagers, vibrating watches, vibrating bed devices, or message boards that would alert Plaintiffs to an emergency, such as a fire or lockdown. FAC ¶¶ 60.

- **Plaintiffs' Intended Discovery:**

    - Deposition of Mr. McKoy to discover whether any consideration or

accommodations have been provided to Plaintiff Boyd to alert him in the event of an emergency, and to discover all of the facts concerning the "assign[ment]" of Plaintiff Heyer's roommate.

- Deposition of Plaintiff Heyer's roommate to discover his understanding of what Defendants have "assigned" him to do, and also to discover his responsibilities, ability, and willingness to alert and communicate with Plaintiff Heyer in case of an emergency.

- Document requests seeking all documents concerning the ICP program in general and Plaintiff Heyer's roommate in particular. Document requests concerning policies and procedures of notifying deaf detainees of emergencies.

- Potential expert discovery concerning insufficiency of relying on other inmates to alert deaf detainees to emergencies, and necessity of non-aural devices to alerting deaf detainees of emergencies.

- Potential inspection of physical space in which Plaintiffs reside to discover sufficiency of existing non-aural devices (if any exist) to alerting deaf detainees of emergencies.

D. <u>Dry Erase Boards</u>

- **Defendants' Evidence**: The BOP has given Plaintiffs dry erase boards. Steinour Decl. ¶ 5 (Doc. # 33-5).

- **Plaintiffs' Intended Discovery**: Expert discovery concerning insufficiency of relying on handwritten notes on dry erase boards to provide effective communication to Plaintiffs.

E. <u>Allegedly Forthcoming Interpreters</u>

- **Defendants' Evidence**: The BOP has awarded a contract to a vendor to provide ASL interpreting to Plaintiffs, and when/if the necessary background checks clear, Butner's departments "will be able to request interpreter services from the selected vendor." Steinour Decl. ¶ 6. Butner is "in the process of discussing how to implement video interpreting services within the Health Services Department." Jacobs Decl. ¶ 4 (Doc. # 33-6).

- **Plaintiffs' Existing Evidence**: To date, no interpreters have been provided to Plaintiffs for any aspect of their detention. FAC ¶¶ 33-78.

- **Plaintiffs' Intended Discovery**:

  - Deposition of Karen Steinour to discover the identity of the vendor

and the scope of work given to the vendor by Defendants, and to discover what policies and procedures (if any) will guide any internal "request[s]" for interpreter services at Butner, including when (if ever) such "request[s]" can be refused.

- Potential deposition of or document discovery to selected vendor to determine ASL interpreter qualifications.

- Deposition of Amy Jacobs to discover what policies and procedures (if any) will guide Plaintiffs' ability to request and obtain video interpreting services for medical appointments.

- Document requests seeking all documents concerning Defendants' search for and selection of vendor-interpreters, including the contract and any scope of work in connection with any contracts.

F. <u>ICom Device Allegedly Under Review</u>

- o **Defendants' Evidence**: FCI Butner is "currently reviewing" Plaintiff Boyd's request for use of an "interface device," including whether such a device raises "security concerns." Steinour Decl. ¶ 7.

- o **Plaintiffs' Existing Evidence**: Plaintiff Boyd has requested and Defendants have failed to provide an Icom device, which would permit Mr. Boyd to better hear sounds from the television units or other audio devices inside the facilities at FCI Butner. FAC ¶ 68.

- o **Plaintiffs' Intended Discovery**:

    - Deposition of Karen Steinour to discover the nature of the "educational videos" used in the treatment program to determine whether an ICom device would permit Plaintiff Boyd to meaningfully participate in those aspects of the program. Also, to discover the basis of any purported "security concerns" that would lead to the denial of such a device.

G. <u>Interpreters for Religious Services</u>

- o **Defendants' Evidence**: Jordan May, Chaplain assigned to Butner in February 2011, states that Plaintiffs have never requested of him an interpreter for religious services. May Decl. ¶ 6 (Doc. # 33-7).

- o **Plaintiffs' Intended Discovery**:

    - Deposition of Mr. May to determine whether his predecessors or colleagues ever informed him of any requests by Plaintiffs for interpreters for religious services.

5

- Written discovery concerning any formal or informal requests by Plaintiffs concerning interpreters for religious services made to individuals other than Mr. May.

- Potential discovery regarding the availability and sufficiency of Plaintiffs' using an ICP during religious services.

6. In sum, Plaintiffs need to take discovery—including but not limited to thoroughly deposing Defendants' witnesses, deposing additional fact witnesses, presenting expert witnesses and reports on a variety of issues, inspecting FCI Butner's physical premises, discovering Defendants' policies and procedures with respect to disabled detainees in general and Plaintiffs in particular, and discovering Defendants' policies and procedures (if any exist) aimed at ensuring Defendants' compliance with federal law such as the Rehabilitation Act. At this juncture of the case, Plaintiffs have not yet had the opportunity to commence any discovery on these, or any other, issues.

7. Though genuine disputes as to material issues of fact *already* exist with respect to each basis upon which Defendants seek summary judgment, Plaintiffs intend to discover additional facts that would create additional disputes as to material issues of fact and that would defeat Defendants' alternative Motion for Summary Judgment. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment or, in the alternative, grant Plaintiffs a continuance to respond to the Motion until Plaintiffs have been afforded a reasonable time to conduct discovery.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on July 19, 2012.

_____
Ian S. Hoffman