DEFENDANTS EXHIBIT 27

```
                                                              1

 1              UNITED STATES DISTRICT COURT

 2          EASTERN DISTRICT OF NORTH CAROLINA

 3                   WESTERN DIVISION

 4   - - - - - - - - - - - - - - - x

 5   THOMAS HEYER and ROBERT BOYD,    :

 6            Plaintiffs,             :

 7       v.                           : Civil Action No.

 8   UNITED STATES BUREAU OF          : 5:11-CT-3118-D

 9   PRISONS, et al.,                 :

10            Defendants.             :

11   - - - - - - - - - - - - - - - x

12         SENSITIVE - SUBJECT TO PROTECTIVE ORDER

13           Deposition of U.S. BUREAU OF PRISONS,

14      By and through its Designated Representative,

15                   TODD RODRICK CRAIG

16                     Washington, DC

17               Thursday, January 9, 2014

18                       9:39 a.m.

19

20   Job No.: 49884

21   Pages: 1 - 303

22   Reported by: Lee Bursten, RMR, CRR
```

1  interestingly enough, that automates language
2  translation and allows it to have some of the same
3  features that the TRUFONE system has in terms of the
4  searchable database, in terms of link analysis, which
5  is basically, I'm sure you're familiar with that, how
6  investigators connect the dots between a phone call,
7  a commissary payment, perhaps multiple calls to the
8  same call in the community.
9      So language translation is an issue, and we
10 pay considerable money every year to facilitate that.
11     Q   So you said you have two full-time
12 translators who assist in monitoring calls or
13 recordings; is that right?
14     A   Yes.
15     Q   Are they Spanish -- is it fair to assume
16 they're for Spanish-speaking inmates and calls?  Is
17 that right?
18     A   One is.
19     Q   I'll just ask the direct question.  Are
20 either of them American Sign Language interpreters?
21     A   No.
22     Q   And one is for Spanish and one is for

1    A    It's the provider's opinion of that, yes.

2    Q    And the provider has informed you in this
3 case that VRS calls could be recorded via a video out
4 jack in an analog manner or an HDMI jack in a digital
5 manner through either a VCR or a DVR recorder; is
6 that accurate?

7    A    That's accurate.

8    Q    And in the last sentence of that section,
9 "Unfortunately, neither of these solutions are
10 automated and neither is sufficiently robust to
11 ensure that all VRS calls are recorded, that a
12 significant number of recordings can be retained, and
13 that calls can be preserved with sufficient
14 identifying information."

15        So I would like to walk through that a
16 little bit and unpack some of that.  So "neither of
17 these solutions," you're referring to recording
18 through a VCR or a DVR recorder; is that right?

19   A    Correct.

20   Q    "Neither of them are automated," what do
21 you mean by that?

22   A    What I meant by that sentence was to draw a

1  contrast to, for example, the Inmate Telephone System
2  that has a way of organizing the recorded information
3  by identifying information unique to each inmate so
4  the database is searchable, and then the data is
5  usable for either internal intelligence, internal
6  discipline, or subsequent criminal prosecution.
7      Q    So what you're saying here is that
8  recording through a DVR recorder, for example, or a
9  VCR, isn't automated in the same way that the TRUFONE
10 telephone calls are recorded?
11     A    Apples and oranges.  Correct.
12     Q    Apples and oranges between these proposed
13 solutions and the TRUFONE system?
14     A    Right.  To get to the heart of the matter,
15 counselor, it's a commercial off-the-shelf, a COT
16 solution, as we call it.  But it hasn't gone through
17 a verification process that meets all the DOJ IT
18 security requirements, or that it meets our
19 correctional purpose or meets our correctional
20 security requirements.
21     Q    And by "not automated," you would mean that
22 each -- what the solution that Sorenson is providing

1  is that each time the call was made, the staff member
2  would have to press record for it to happen, right?
3      A    Correct. And there's no -- is it secure,
4  is it encrypted, all those things.
5      Q    Right. And we'll get to all that. But in
6  terms of the automated.
7      A    Automated, yes.
8      Q    And the next part of the sentence says
9  "Neither of the solutions," again, the VCR or DVR,
10 "is sufficiently robust to ensure that all VRS calls
11 are recorded." What do you mean by that?
12     A    The storage capacity. These machines are
13 basically set up for individual home use. They
14 weren't even set up for commercial use. And they're
15 certainly not set up for the robust environment of a
16 prison environment that would have to store a
17 considerable amount of data.
18          For example, if you had a considerable
19 number of deaf/hard of hearing inmates at one
20 facility, the compression and storage of video, and
21 I'm acutely aware from some other projects, audio
22 surveillance and some other security systems, even in

1  this building, I'm not going to discuss, takes a

2  tremendous amount of storage room.  Terabytes, even

3  petabytes.

4         And there's no mechanism on the Trust Fund

5  Network or no provision on the BOPNet generally that

6  would accommodate that magnitude of storage of data.

7       Q    So these solutions they're talking about,

8  like a VHS tape that comes out of a VCR?

9       A    A VHS tape that comes out of a VCR?

10      Q    Yes.

11      A    Correct.

12      Q    So one of these solutions that Sorenson had

13 proposed involved using a VCR, right?

14      A    (Witness nods head.)

15      Q    So that would involve using a VHS tape?

16      A    Correct.

17      Q    And so why couldn't the unit staff office

18 have a stack of VHS tapes and pop one in each time a

19 call is made and press play/record?

20      A    Because it's outmoded technology.  For

21 example, years ago, we used to record our internal

22 CCTV, our camera network, on VCR tapes, VHS tapes.

1  Those have moved to network video recorders for those
2  same reasons that I articulated. It has to be
3  secure, it has to be searchable, and it has to be
4  able to contain that storage.
5       We have a set time requirement that I'm not
6  going to discuss publically, but to maintain those
7  surveillance tapes for management or evidentiary
8  purposes.
9       Q     But if you use VHS tapes, or say DVDs with
10 a DVD recorder, just like if you're using an audio
11 cassette recorder, capacity would merely depend --
12 let's just talk about capacity, because I understand
13 there's all the other security concerns, but just
14 capacity would depend on the amount of VHS tapes you
15 have, right?
16      A     Correct.
17      Q     Or amount of CDs or DVDs if it was burned
18 onto a DVD, right?
19      A     Correct.
20      Q     The next part of the sentence says,
21 "Neither of the solutions," again referring to the
22 VCR or DVR recorder, "is robust enough to ensure that

1   a significant number of recordings can be retained."
2   So are you referring to what you were talking about
3   earlier with the terabytes of data that could be
4   accumulated with voice calls?
5       A    Yes.  Searchable database, link analysis,
6   and appropriate IT security safeguards consistent
7   with DOJ standing orders, yes.
8       Q    But again, the capacity -- if you're just
9   talking about VHS tapes, the capacity is dependent
10  upon your ability to accumulate and store VHS tapes,
11  correct?
12      A    Correct.
13      Q    And the same with CDs and DVDs?
14      A    Correct.
15      Q    And then the last part says that neither
16  the VCR or DVR is sufficient to ensure that the calls
17  can be preserved with sufficient identifying
18  information.  What are you referring to there?
19      A    How do you maintain the integrity of the
20  VHS tape.  Certainly our staff could mark it, would
21  be in possession of it.  But for example, if an
22  inmate orderly was cleaning the office, could they

1  access that when another staff member was not as
2  diligent as they should be?  Absolutely, it's a
3  security risk.
4      Q    So it's possible that even a VHS tape or a
5  DVD that has recorded the call could be tampered with
6  by other inmates, is what you're saying; is that
7  right?
8      A    There's always a countermeasure to every
9  security.  You can put it in a lock safe.  You can do
10 all kinds of things.  I don't care how many layers of
11 security you build on it, there's always that
12 potential.
13     Q    There's always a risk for --
14     A    We try to do everything we can to minimize
15 the risk so we can carry out our public safety
16 mission.
17     Q    So, just reviewing these impediments that
18 you've listed here on this page of Plaintiffs'
19 Exhibit 71 in connection with VCR or DVR, the first
20 one we talked about was that it's not automated, that
21 the staff person would have to press play/record each
22 time, right?

1   A    Let's talk about that.

2   Q    Sure.

3   A    To put a -- VCR, just speaking from my
4   subject matter opinion, is outmoded technology.
5   We're not going to do that.  NVR, network video
6   recorder, is current state of the art.  Recent
7   experience with that was in security systems I won't
8   discuss here in this public venue.

9        Just to put that recorder at each of our
10  institutions, let alone get 119 waivers for a
11  standalone DSL line, is a minimum of 1.5 to $2
12  million, just to have that recording capability on a
13  network-wide basis, enterprise-wide basis.

14  Q    That would have to be at every facility,
15  right?

16  A    At 119 existing.  That's what the rough
17  order of magnitude is projecting on.

18  Q    Do you know how many facilities have deaf
19  inmates, of those 119?

20  A    I do not.

21  Q    So any video --

22  A    That's a changeable number.