# EXHIBIT A

# PARTIAL SETTLEMENT AGREEMENT

This Partial Settlement Agreement (the "Agreement") is entered into as of November 2, 2017 and memorializes the agreement by and among Thomas Heyer ("Heyer") and the U.S. Bureau of Prisons (the "BOP"). Heyer and the BOP are collectively referred to herein as the "Parties."

## DEFINITIONS

A. The "Case" means *Heyer v. U.S. Bureau of Prisons, et al.*, No. 5:11-ct-3118-D (E.D.N.C.) and all appeals arising therefrom, including *Heyer v. U.S Bureau of Prisons, et al.*, No. 15-6826 (4th Cir.).

B. "BOP" means the U.S. Bureau of Prisons.

C. "BOP employees," "BOP staff," "BOP personnel" include all employees, agents, and other staff of the BOP, whether located at Butner or elsewhere, including but not limited to wardens, unit staff, counselors, correctional officers, SIS and other investigative staff, lieutenants, medical professionals, mental health professionals, psychologists, and CTP staff.

D. "Butner" means FCI Butner, the facility in which Heyer is currently housed.

E. "CTP" means the Commitment and Treatment Program for inmates certified and committed as sexually dangerous persons pursuant to 18 U.S.C. § 4248.

F. "Defendants" means the Defendants named in the Case, in particular: the BOP, Eric H. Holder, Jr. (in his official capacity as Attorney General of the United States), Charles E. Samuels, Jr. (in his official capacity as Acting Direct of the BOP), Ike Eichenlaub (in his official capacity as Regional Director of the BOP, Mid-Atlantic Region), Sara M. Revell (in her official capacity as Warden of FCC Butner), and Tracy W. Johns (in his official capacity as Warden of FCI Butner Medium).

G. The "Effective Date" means the date the Court in the Case enters the Agreed Order attached as Exhibit A hereto.

H. The "Execution Date" means the date upon which the last Party signs the Agreement.

I. "Heyer" means Thomas Heyer, Register No. 30155-074.

J. "Qualified ASL Interpreter" means a person who is able to interpret effectively, accurately, and impartially, both receptively and expressively, with the deaf individual using any necessary specialized vocabulary. For sign language interpreters, a Qualified Interpreter is one who holds, or will hold within three (3) months of first interpreting for Heyer, one or more of the following current, valid certifications:

- Registry of Interpreters for the Deaf Certification as a CI/CT, CSC, MCSC, OTC, CDI, or RSC;

- National Association of the Deaf (NAD) Certification Level 3, 4, or 5; or

- NAD/RID National Interpreter Certification NIC, NIC Advanced, or NIC Master.

The Parties agree that future certifications that are the equivalent of these certifications will be considered valid minimum certification, so long as those certifications are kept current. The Parties further agree that under no circumstance can any inmate be considered a Qualified ASL Interpreter.

K. "Video Remote Interpreting" or "VRI" means video interpreting accomplished by use of video conference technology over high-speed internet lines.

L. "Video Relay Service" or "VRS" means a telephone with a camera and screen for communications between a deaf person and a non-deaf person, using visual translations provided by an offsite interpreter through a VRS interpreting service.

M. "TTY" means a telecommunications device for the deaf that permits individuals to type written messages to each other over a telephone line.

## RECITALS

WHEREAS, Heyer is a civil detainee in the custody of the BOP who is deaf and has no ability hear or understand speech;

WHEREAS, on June 20, 2011, Heyer initiated the Case in the U.S. District Court for the Eastern District of North Carolina by filing a complaint asserting various claims against the BOP and other government defendants; including violations of the U.S. Constitution, the Rehabilitation Act, and the Religious Freedom Restoration Act ("RFRA"), based upon the BOP's alleged failures to provide appropriate Qualified ASL Interpreters, technology, equipment, and other services to accommodate Heyer's disability;

WHEREAS, the Rehabilitation Act claim (Count I) was dismissed by the district court without prejudice, Heyer has since filed the claim in an administrative forum;

WHEREAS, there is a pending administrative action ("Administrative Action") brought by Heyer with respect to certain of his claims against the BOP regarding violations of the Rehabilitation Act of 1973, Pub. L. 930112, codified at 29 U.S.C. §§ 701-797b, and regulations promulgated thereunder (the "Rehabilitation Act"),

WHEREAS, the BOP has denied and continues to deny liability for all violations alleged by Heyer, both in the Case and the Administrative Action;

WHEREAS, the BOP contends that it currently provides Heyer with many of the accommodations addressed in this Agreement, and Plaintiff disputes that contention;

WHEREAS, the BOP has indicated its willingness to provide these and other accommodations requested by Heyer going forward;

WHEREAS, the Parties desire, through this Agreement, to resolve and settle certain claims at issue in the Case and the Administrative Action without the costs and burdens associated with further litigation with respect to such claims and defenses raised in the Case and Administrative Action;

WHEREAS, Heyer desires to preserve his ability to continue to pursue (a) all claims in the Case and Administrative Action pertaining to Heyer's request for access to a videophone that enables him to communicate with persons outside of Butner using VRS and point-to-point videophone services, and (b) all claims in the Administrative Action pertaining to Heyer's request for non-emergency announcements;

WHEREAS, the Parties have engaged in arm's length negotiations through counsel concerning this Agreement;

NOW THEREFORE, the Parties agree, through their respective authorized representatives, to be bound by the terms and conditions set forth below.

**TERMS AND CONDITIONS**

NOW, THEREFORE, in consideration of the mutual promises and obligations in this Agreement, and with full authority to enter into this Agreement, and intending to be bound thereby, the Parties agree as follows:

1. <u>Interpreters</u>. The BOP shall provide Heyer with Qualified ASL Interpreters, either through in-person interpreting or Video Remote Interpreting ("VRI") in all of the following circumstances:

    (a) All medical encounters between Heyer and BOP (or other) health care professionals, including but not limited to all scheduled medical appointments in the Maryland Unit, the Health Services Unit, the Sick Call area, and FMC Butner. The BOP also shall provide Heyer with Qualified ASL Interpreters for any unscheduled encounters during Sick Call and any other walk-in hours in the Health Services Unit. For medical emergencies or urgent medical encounters, BOP shall take all reasonable efforts to

- 4 -

provide a Qualified ASL Interpreter as soon as practicable. The BOP will ensure that all appropriate medical providers are adequately trained to use VRI for unscheduled, emergency, and urgent medical encounters. For medical encounters outside of Butner (*e.g.*, at Duke Medical Center, outside audiology offices, or other outside specialists' offices), the BOP will either provide a Qualified ASL Interpreter or take appropriate steps to ensure that the medical provider's office has arranged for an interpreter to be provided. If for any reason an interpreter is not provided for Heyer at any scheduled medical encounter (*e.g.*, due to interpreter cancellation, or an outside medical office failing to provide an interpreter), the BOP shall promptly reschedule another encounter between Heyer and the appropriate medical professional with a Qualified ASL Interpreter.

(b)     All disciplinary investigations and related proceedings, including but not limited to all investigations conducted by SIS, all Unit Discipline Committee ("UDC") related hearings and proceedings, and all Discipline Hearing Officer ("DHO") related hearings and proceedings. BOP will also provide Heyer with a Qualified ASL Interpreter for any formal or informal interviews with BOP staff where the purpose of such interviews is to investigate suspected misconduct by Heyer or others.

(c)     When the BOP places Heyer in the Special Housing Unit (also known as the "SHU" or the "Annex") for any purpose, in order to give Heyer an opportunity to communicate with BOP staff about that placement, unless BOP staff make a reasonable and good faith determination that Heyer's safety or the safety of others would be threatened by complying with this requirement. In the event BOP staff makes such a determination, BOP staff must then communicate with Heyer using a Qualified ASL Interpreter as soon as practicable after the threat has subsided and in no event later than 24 hours after his placement in the SHU or the Annex, in order to give Heyer an opportunity to communicate with BOP staff about that placement. Thereafter, the BOP will provide Heyer a Qualified ASL Interpreter for any interactions between Heyer and BOP staff concerning the reasons for his placement in the SHU and any ongoing investigative interviews related thereto. The BOP also will provide Heyer a Qualified ASL Interpreter for interactions in the SHU or the Annex with medical or mental health professionals involving interactions concerning Heyer's mental state and whether he presents a danger to himself or others.

(d)     Scheduled staff, contractor, and inmate-lead educational programs (including GED programs) and all vocational programs, provided that Heyer provides staff with notice forty-eight (48) hours in advance of his intended attendance;

(e)     Scheduled Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings, provided that Heyer provides staff with notice forty-eight (48) hours in advance of his intended attendance;

(f)     Scheduled religious programs and services, including but not limited to all weekly Catholic services and holiday services, provided that Heyer provides staff with notice forty-eight (48) hours in advance of his intended attendance;

(h) All scheduled "Town Hall" meetings led by BOP staff. For unscheduled "Town Hall" meetings, BOP staff will make reasonable and good faith efforts to utilize a either a live Qualified ASL Interpreter or VRI. Otherwise, Heyer will be informed of any information relayed during the meeting as soon as practicable thereafter by way of either a live Qualified ASL Interpreter or VRI; and

(g) All aspects of the CTP, including but not limited to one-on-one meetings between Heyer and CTP staff (such as BOP psychologists), group meetings, house meetings, community meetings, therapeutic programs, and all "contextual" or "ancillary" treatment programs that require communication (*i.e.*, with an instructor or facilitator).

2. <u>Interpreter Evaluations</u>. In the event Heyer believes in good faith that any ASL interpreter provided to him by the BOP, on a repeat basis, is not interpreting effectively, Heyer shall inform the BOP of that belief in writing through the BOP's Administrative Remedy Program. In the event Heyer so informs the BOP, the BOP shall evaluate the qualifications of such interpreter, with the live ASL Interpreter contractor, in order to determine whether to continue utilizing that interpreter for Heyer.

3. <u>Video Remote Interpreting</u>. The BOP shall, within ninety (90) calendar days of the Effective Date, install any additional VRI stations that may be needed in order to meet the interpreting obligations provided for in this Agreement (*e.g.*, in the SHU or the Annex). For all VRI stations, the BOP shall ensure that those stations are equipped with high speed internet connections adequate to support VRI.

4. <u>Video Relay Service</u>. The BOP shall install at least one VRS station in Butner that shall provide Heyer access to VRS that will permit Heyer to communicate with persons outside of Butner utilizing video relay interpreters. BOP shall ensure that the VRS station is equipped with a high-speed internet connection adequate to support VRS. The BOP shall provide Heyer access to VRS in a manner that is equivalent or at least substantially similar to non-deaf inmates' access to the telephone, including but not limited to meaningful VRS access on evenings and weekends. The BOP also shall provide Heyer access to VRS while Heyer is

placed in the SHU or the Annex in a manner that is equivalent or at least substantially similar to non-deaf inmates' access to the telephone while placed in the SHU or the Annex.

5. <u>TTY</u>. In the event Heyer needs to use a TTY device—for example and without limitation, if the VRS becomes temporarily unavailable due to technical problems—the BOP shall provide Heyer access to a TTY device, upon his written request, as soon as reasonably practicable at times when non-deaf persons are eligible to use the telephone. For TTY calls requested to be placed between 7:30 a.m. and 4:00 p.m. on weekdays, BOP staff shall allow access to the TTY on the same day of the request absent exigent circumstances. Nothing in this section shall alleviate in any way BOP's obligation to provide Heyer access to VRS as provided in Section 4.

6. <u>Emergency Flashing Lights.</u> The BOP shall provide emergency flashing lights, connected to Butner's existing emergency notification system, in at least the following location, (a) inside Heyer's room and in every room in which he may be housed at Butner or any other BOP facility, excluding the Special Housing Unit or the Annex; (b) inside the bathroom and shower facility Heyer primarily uses in Butner or any other BOP facility; and (c) inside the laundry room Heyer primarily uses in Butner or any other BOP facility.

7. <u>Vibrating Emergency Alarms.</u> The BOP will provide Heyer a bed-shaking device, connected to Butner's existing emergency notification system, that can physically wake Heyer in the event of an emergency. The BOP will provide such a device in every bed in which Heyer sleeps in Butner and in any other BOP facility, excluding the Special Housing Unit or the Annex.

8. <u>Watch Battery and Vibrating Clock</u>. The BOP shall allow Heyer to purchase batteries for his vibrating watch as needed to keep that watch functioning. The BOP also shall

allow Heyer to purchase an approved bedside clock equipped with a pillow- or bed-shaking alarm.

9. <u>Closed Captioning</u>. The BOP shall provide Heyer with closed captioning for all movies, television, videos or other visual programs viewable by Heyer, including but not limited all videos shown as part of the CTP Program, unless closed captioning is not available for such videos or other visual programs. To the extent closed captioning is not available for videos or visual programs shown as part of the CTP Program, or any educational or vocational program, the BOP agrees to provide Qualified ASL Interpreters while those videos or visual programs are shown.

10. <u>Attorneys' Fees and Expenses.</u> Within sixty (60) calendar days of the date the Court enters an order providing for payment of attorney's fees and costs, the BOP shall pay $100,000 to Heyer's counsel, Arnold & Porter Kaye Scholer, LLP, which reflects a portion of Heyer's attorneys' fees and out-of-pocket expenses incurred to date in connection with the Released Claims, as defined in Section 11. In the event Heyer prevails, in whole or in part, after trial or in any subsequent appeals of any of the Preserved Claims in the Case, as defined in Section 12, Heyer shall seek from the Court only those attorney's fees and costs that can be reasonably attributed to having been incurred in connection with such Preserved Claims (incurred before and after the Effective Date), not to exceed $75,000 for such attorney's fees and costs. Further, in the event Heyer prevails, in whole or in part, on any of the Preserved Claims in the Administrative Action or in any subsequent appeals, Heyer shall seek from the appropriate Administrative Tribunal or court only those attorney's fees and costs that can be reasonably attributed to having been incurred in connection with such Preserved Claims (incurred before and after the Effective Date), not to exceed $75,000 for such attorney's fees and costs. The BOP

expressly preserves and does not waive any argument as to Heyer's entitlement to fees or costs in the Case or the Administrative Action.

11. <u>Release</u>.  With the exception of (a) Heyer's right to assert the Preserved Claims as provided in Section 12; (b) Heyer's right to enforce the terms of this Agreement as provided in Section 15, and (c) Heyer's ability to assert claims based on future conduct by the BOP as provided in Section 13, Heyer hereby executes a full and complete release, on his behalf and on behalf of his representatives, assignees, heirs, successors, executors, and beneficiaries, and hereby forever discharges all Defendants, their agencies, employees, agents, officials, and their representatives, from any and all claims and causes of action, known and unknown, asserted and unasserted, direct and indirect, and of any kind, nature or description whatsoever, which Heyer had on or before the Execution Date of this Agreement arising out of the facts set forth in the claims he filed in the Case and the Administrative Action (the "Released Claims").  The Parties agree that the Released Claims include without limitation:

(a) Count II in the Case (Violation of the U.S. Constitution, Fifth Amendment, Deprivation of Liberty in Civil Commitment);

(b) Count IV in the Case (Violation of the U.S. Constitution, Fifth Amendment, Informed Consent to Medical Treatment);

(c) Count VI in the Case (Violation of the U.S. Constitution, Fifth Amendment, Right to Adequate Medical Treatment );

(d) Count VII in the Case (Violation of the U.S. Constitution, Fifth Amendment, Right to Reasonably Safe Environment);

(e) Count IX in the Case (Violation of the Religious Freedom Restoration Act); and

(f) Count X in the Case (Violation of the U.S. Constitution, First Amendment, Right to Free Exercise of Religion);

(g) Counts I, III, and V in the Case, which were dismissed by the district court without prejudice and were not raised on appeal, and thus are no longer at issue in the Case.

- 9 -

Case 5:11-ct-03118-D   Document 181-1   Filed 11/02/17   Page 10 of 17

12. <u>Preserved Claims</u>. The Parties agree that the following claims are expressly preserved and not released by Heyer:

(a) Count VIII (Violation of the U.S. Constitution, First Amendment) in the Case as it pertains to Heyer's demand for access to a videophone that will allow him to communicate directly (point-to-point) with persons outside of Butner using ASL;

(b) Heyer's Rehabilitation Act claim pending in the Administrative Action (which stemmed from Count I in the Case, which was dismissed without prejudice) as it pertains to Heyer's demand for access to a videophone that will allow him to communicate directly (point-to-point) with persons outside of Butner using ASL, and any claims arising from or related to the final decision in the Administrative Action, including any other claims or theories (other than based on the Rehabilitation Act) that seek the same relief;

(c) Heyer's Rehabilitation Act claim pending in the Administrative Action (which stemmed from Count I in the Case, which was dismissed without prejudice) as it pertains to Heyer's demand for visual, real time notifications of non-emergency events or announcements, *e.g.*, through electronic message boards and personal vibrating pagers or similar devices, and any claims arising from or related to the final decision in the Administrative Action, including any other claims or theories (other than based on the Rehabilitation Act) that seek the same relief;

(d) Heyer's Rehabilitation Act claim pending in the Administrative Action (which stemmed from Count I in this Case, which was dismissed without prejudice) as it pertains to Heyer's demand for Qualified ASL Interpreters to be provided to assist with self-study GED programs and materials, and any claims arising from or related to the final decision in the Administrative Action, including any other claims or theories (other than based on the Rehabilitation Act) that seek the same relief; and

(e) All claims that may be based on the BOP's placement of Heyer in the SHU or in the Annex in or around February 2017 and August 2017 and the circumstances surrounding such placement.

13. <u>Future Conduct Claims</u>. The Parties agree that Heyer shall preserve and not release any claims based on acts or omissions that occur after the Effective Date of this Agreement ("Future Conduct Claims"). To the extent Heyer asserts any Future Conduct Claims that relate to the accommodations the BOP agrees to provide in this Agreement, such claims shall be subject to the informal resolution procedures set forth in Section 16. Heyer agrees that

any Future Conduct Claim shall not be based upon or supported by any acts or omissions which allegedly occurred prior to the Effective Date of this Agreement.

14. <u>Dismissal</u>. Within three (3) business days after the Execution Date, the Parties shall file this Partial Settlement Agreement and an Agreed Order dismissing with prejudice the Released Claims that remain in the Case. The Agreed Order shall provide that (a) the Released claims are dismissed with prejudice, (b) the Agreement is incorporated into the order dismissing the Released Claims, and (c) the Court retains jurisdiction to enforce the order. The form of the Agreed Order that shall be filed with the Court is attached hereto as Exhibit A. In the event the Court does not enter the Agreed Order, the Parties shall have the right within three (3) business days, in their sole discretion, to declare this entire Agreement null and void. Further, within three (3) business days after the Court enters the Agreed Order, Heyer shall inform the BOP's EEO Officer and any other appropriate person(s) in connection with the Administrative Action of this Agreement and notify the BOP's EEO Officer that Heyer is withdrawing his administrative, Rehabilitation Act complaint for all issues except for the Preserved Claims asserted in the Administrative Action.

15. <u>Governing Law and Forum Selection</u>. This Agreement shall be governed by and construed in accordance with the laws of the United States. Any action to enforce this Agreement, and any and all disputes of any kind whatsoever relating directly or indirectly to or in any way in connection with this Agreement, shall hereafter be heard exclusively in the United States District Court for the Eastern District of North Carolina, and shall be brought by motion filed in the Case (No. 5:10-ct-3118-D). If any party brings an action to enforce this Agreement, following the informal resolution period, the prevailing party shall be entitled its reasonable attorney's fees and costs but only to the extent such a fee award is authorized by a waiver of

sovereign immunity beyond the terms of this Agreement.  In the event it is determined that no such waiver is found, the prevailing party may nevertheless request that fees and costs be provided, and the non-prevailing party reserves all rights to oppose that request.

      16.    <u>Informal Resolution Period</u>.  Prior to bringing any Future Conduct Claims against the BOP, or any proceeding pursuant to Section 15 ("Governing Law and Forum Selection"), Heyer shall provide written notice to BOP through the established Administrative Remedy Program concerning any Future Conduct Claim or any alleged breach or failure to comply with the terms of this Agreement.  It is understood that Heyer will submit an informal grievance (BP-8) and a formal appeal to the Warden (BP-9) if necessary, and this will constitute exhaustion of the Administrative Remedy Program for purposes of this Section.  Heyer's counsel may assist him in preparing the administrative remedy (BP-8) and an appeal (BP-9), and may send a copies of each to FCC Butner legal counsel.  If, after completion of the administrative remedy process, or after forty-five (45) calendar days following written notice of the BP-8 from Heyer's counsel (whichever is sooner) (the "cure period"), the Parties have not resolved their dispute, the Parties agree to jointly request a settlement conference with a U.S. Magistrate Judge assigned to the Eastern District of North Carolina, Western Division, within forty-five (45) calendar days  after the expiration of the "cure period."  No Party shall bring any Future Conduct Claim, or enforcement proceeding pursuant to Section 15 prior to jointly requesting a settlement conference as set forth herein and, if set by the Magistrate Judge, attending such settlement conference.  In the event Heyer becomes a sentenced inmate, he will be required to fully exhaust his administrative remedies in accordance with 28 C.F.R. § 542 *et seq.* during that period of time.

17. <u>Confidentiality</u>.  No part of this Agreement is or will be considered confidential by the parties.  This Agreement will be made available by request under the Freedom of Information Act.

18. <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, all successors and assigns of the Parties hereto.

19. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and merges any and all prior discussions and negotiations between the Parties.

20. <u>No Oral Modifications</u>.  This Agreement shall not be changed, altered, or modified in any manner except in a writing signed by all Parties to this Agreement.

21. <u>Headings</u>.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

22. <u>No Party is the Drafter.</u>  Counsel to all Parties hereto have materially participated in the negotiation and drafting of this Agreement.  Further, each Party and counsel for each Party has carefully reviewed this Agreement.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

23. <u>Severability.</u>  Each provision of this Agreement shall be considered severable, and if for any reason any provision is deemed to be invalid or contrary to any existing or future law, ordinance, regulation, or covenant, all other provisions shall remain in effect.

24. <u>Execution in Counterparts.</u> This Agreement may be executed in counterparts. Facsimile or PDF-ed signatures shall be considered as valid signatures as of the date thereof.

25. <u>Voluntary Execution</u>.  Each of the Parties represents that this Agreement and its recitals are being voluntarily executed by such party without any duress or undue influence of any kind on that party by any person, firm, or entity.

26. <u>Effective Date</u>.  This Agreement will become effective upon the Execution Date.

27. <u>Term</u>.  This Agreement shall remain in effect from the Effective Date through the remainder of Heyer's civil commitment with the BOP.  If Heyer leaves the BOP's custody and later returns to the BOP's custody, this Agreement shall remain in effect upon Heyer's return and throughout the duration of any subsequent civil commitment.

[*Signature Pages Follow*]

AGREED AND EXECUTED by the Parties hereto:

For: THOMAS HEYER

Name: *Thomas Heyer*

Signature: X *[signature]*

Dated: 11-2-17



For: U.S. BUREAU OF PRISONS

ROBERT J. HIGDON, JR.
United States Attorney

BY: /s/ G. Norman Acker, III
Assistant United States Attorney
Chief, Civil Division
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
(919) 856-4315
Email: norman.acker@usdoj.gov
NC Bar 12839

*Attorney for United States Bureau Of Prisons*


Signature: _____

Dated: _____

AGREED AND EXECUTED by the Parties hereto:

For: THOMAS HEYER

Name: *Thomas Heyer*

Signature: X *[signature]*

Dated: 11-2-17



For: U.S. BUREAU OF PRISONS

ROBERT J. HIGDON, JR.
United States Attorney

BY: /s/ G. Norman Acker, III
Assistant United States Attorney
Chief, Civil Division
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
(919) 856-4315
Email: norman.acker@usdoj.gov
NC Bar 12839

*Attorney for United States Bureau Of Prisons*

Signature: *[signature]*

Dated: 11/2/17

- 15 -

Case 5:11-ct-03118-D   Document 181-1   Filed 11/02/17   Page 17 of 17